Janet K. Larsen, OSB No. 950279
larsenj@lanepowell.com
Kristen L. Price, OSB No. 175700
pricek@LanePowell.com
**LANE POWELL PC**
601 S.W. Second Avenue, Suite 2100
Portland, Oregon 97204
Telephone:  503.778.2100
Facsimile:  503.778.2200

Attorneys for Defendant Melissa Adams

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| REZA MOTAMENI, an individual, <br><br>          Plaintiff, <br><br>    v. <br><br> MELISSA ADAMS, an individual formerly known as Melissa Motameni, <br><br>          Defendant, <br> and <br><br> MOTO-BIZ, INC., an Oregon corporation, <br><br>          Nominal Defendant. | Case No. 3:21-cv-01184-HZ <br><br> **DEFENDANT MELISSA ADAMS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO STRIKE PORTIONS OF SAME** <br><br> ORAL ARGUMENT REQUESTED |

DEFENDANT MELISSA ADAMS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND MOTION TO
STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    LR 7-1(A) CERTIFICATION ................................................................1

II.   MOTION..............................................................................................1

III.  MEMORANDUM OF POINTS AND AUTHORITIES .......................1

     A.    Introduction.................................................................................1

     B.    Procedural History. ....................................................................4

     C.    Statement of Alleged Facts. .......................................................5

          1.    Moto Biz is formed. ........................................................5

          2.    Plaintiff and Adams Divorce. .........................................5

          3.    The Company's Operations After the Parties' Divorce. ...........................5

          4.    Adams' Allegedly Wrongful Conduct and Damages Caused by Same.....................6

     D.    Argument. ..................................................................................8

          1.    Applicable Legal Standards. ...........................................8

          2.    The SAC Must Be Dismissed Because Plaintiff Has Failed to Meet the Pleading Standards For Derivative Suits. ...........................................10

               a.    Plaintiff fails to allege facts raising reasonable doubt that Adams is an independent and disinterested director.....................12

               b.    Plaintiff fails to allege facts raising a reasonable doubt that Adams' decisions were the product of a valid business judgment. ........................14

          3.    Plaintiff Fails to State a Claim Upon Which Relief May Be Granted. ...................................15

               a.    Plaintiff fails to state a claim for breach of fiduciary duty ...........15

                    (1)   Plaintiff fails to allege facts sufficient to establish Adams breached the fiduciary duties she owed to the Company as a director. ..............16

                    (2)   Plaintiff fails to allege facts showing Adams owed him a special duty as a shareholder...............19

               b.    Plaintiff fails to state a claim for equitable relief........................20

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

c. Plaintiff fails to state a claim pursuant to Or. Rev. Stat. § 60.952...........................................................................................21

4. The Court Strike the Immaterial and Impertinent Allegations From the SAC......................................................................................23

a. The Court should strike all allegations related to Plaintiff's claims for allegedly past-due salaries from the Company. ...........24

b. The Court should strike Plaintiff's request for attorneys' fees pursuant to Article VII of the Company's Bylaws .......................25

IV. CONCLUSION.................................................................................................25

PAGE ii –  DEFENDANT MELISSA ADAMS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND MOTION TO
STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abrego Abrego v. Dow Chem. Co.*,
   443 F.3d 676 (9th Cir. 2006) ...................................................................................9

*Amfac Foods, Inc. v. International Systems & Controls Corp.*,
   294 Or. 94 (1982)....................................................................................................24

*Aronson v. Lewis*,
   473 A.2d 805 (Del. 1984) ...............................................................11, 12, 14, 15

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..................................................................................................8

*Ashwander v. Tennessee Valley Authority*,
   297 U.S. 288 (1936)................................................................................................20

*Baker v. Commercial Body Builders, Inc.*,
   264 Or. 614 (1973)..................................................................................................23

*Balistreri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1988) .................................................................................8

*Bank Tejarat v. Varsho–Saz*,
   723 F. Supp. 516 (C.D. Cal. 1989) .......................................................................9

*Beam v. Stewart*,
   845 A.2d 1040 (Del. 2004) ...............................................................11, 12, 13, 15

*Bernards v. Summit Real Estate Management, Inc.*,
   229 Or. App. 357 ....................................................................................................16

*Brehm v. Eisner*,
   746 A.2d 244 (Del. 2000) ......................................................................................11

*Campbell v. Ford Industries, Inc.*,
   266 Or. 479, 513 P.2d 1153 (1973) ....................................................................22

*In re Citigroup Inc. S'holder Derivative Litig.*,
   964 A.2d 106 (Del. Ch. 2009)...............................................................................13

*Conklin v. Karban Rock, Inc.*,
   94 Or. App. 593, rev den, 307 Or. 719 (1989).................................................17

PAGE iii – DEFENDANT MELISSA ADAMS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND MOTION TO
STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

*Cooke v. Fresh Exp. Foods Corp., Inc.*,
  169 Or. App. 101 (2000).................................................................................23

*Crandon Capital Partners v. Shelk*,
  219 Or. App. 16 (2008).................................................................10, 11, 14, 15

*Doe I v. Wal-Mart Inc.*,
  572 F.3d 677 (9th Cir. 2009) ..........................................................................8

*Empire Fire & Marine Ins. v. Fremont Indemnity*,
  90 Or. App. 56 (1988).....................................................................................17

*Fantasy, Inc. v. Fogerty*,
  984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).........................9

*Graydog, Inc. v. Giller*,
  362 Or. 177 (2017).........................................................................................21

*Hayes v. Olmsted & Assocs., Inc.*,
  173 Or. App. 259 (2001)................................................................................22

*Hickey v. Hickey*,
  269 Or. App. 258 (2015)............................................................................21, 22

*In re J.P. Morgan*,
  906 A.2d at 821.................................................................12, 13, 14, 18

*Kamen v. Kemper Fin. Servs., Inc.*,
  500 US 90 (1991).........................................................................................10

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) .........................................................................9

*Lee v. City of Los Angeles*,
  250 F.3d 668 (9th Cir. 2001) .........................................................................9

*Lindland v. United Business Investments*,
  298 OR. 318 (1984) .....................................................................................18

*Locati v. Johnson*,
  160 Or. App. 63 (1999)............................................................................17, 19

*Lyondell Chem. Co. v. Ryan*,
  970 A.2d 235 (Del. 2009) ..............................................................................18

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
  521 F.3d 1097 (9th Cir. 2008) .......................................................................9

PAGE iv – DEFENDANT MELISSA ADAMS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND MOTION TO
STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

*Naito v. Naito*,
178 Or. App. 1 (2001) ................................................................................................16, 19

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) ..............................................................................................9

*Plumbers Loc. No. 137 Pension Fund v. Davis*,
No. CIV. 03:11-633-AC, 2012 WL 104776 (D. Or. Jan. 11, 2012) .....................................11

*Postorivo v. AG Paintball Holdings, Inc.*,
Nos. 2991-VCP, 3111-VCP, 2008 WL 553205 (Del. Ch. Feb. 29, 2008).........................12, 14

*Potter v. Hughes*,
546 F3d 1051 (9th Cir. 2008) ............................................................................................10

*Rice v. Oriental Fireworks Co.*,
75 Or. App. 627 (1985)......................................................................................................24

*Ryan v. Gifford*,
918 A.2d 341 (Del. 2007) ..................................................................................................15

*Sommers v. Lewis*,
641 F. Supp. 2d 1151 (D. Or. 2009) ...............................................................................10, 11

*Spada Properties, Inc. v. Unified Grocers, Inc.*,
121 F. Supp. 3d 1070,1090 (D. Or. 2015.) ........................................................................16

*Spiegel v. Buntrock*,
571 A.2d 767 (Del. 1990) ..................................................................................................13

*Sprewell v. Golden State Warriors, Inc.*,
266 F.3d 979 (9th Cir. 2001) ..............................................................................................9

*Stringer v. Car Data Sys., Inc.*,
108 Or. App. 523, opinion modified on reconsideration, 110 Or. App. 14
(1991), aff'd, 314 Or. 576 (1992) ..............................................................................17, 19, 20

*Stull v. Hoke*,
326 Or. 72 (1997)...............................................................................................................17

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ............................................................................................9, 17

*Wood v. Baum*,
953 A.2d 136 (Del. 2008) ..................................................................................................11

*Zidell v. Zidell, Inc.*,
277 Or. 413, 418 (1977).....................................................................................................19

PAGE v – DEFENDANT MELISSA ADAMS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND MOTION TO
STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

**Statutes**

28 U.S.C. § 2201(a) ...................................................................................................................20

Or. Rev. Stat. § 12.080(1). .........................................................................................................25

Or. Rev. Stat. § 12.110(1) ..........................................................................................................25

Or. Rev. Stat. § 60.261(2) ..........................................................................................................10

Or. Rev. Stat. § 60.952...................................................................................................4, 21, 22

Or. Rev. Stat. § 60.952(1) ...........................................................................................................22

Or. Rev. Stat. § 60.952(1)(a).......................................................................................................22

Or. Rev. Stat. § 60.952(1)(a)-(b).........................................................................................21, 23

Or. Rev. Stat. § 60.952(2) ...............................................................................................4, 21, 22

ORS 60.952 ..................................................................................................................................21

**Other Authorities**

Fed. R. Civ. P 12(b)(6)........................................................................................................1, 8, 9

Fed. R. Civ. P 12(f)..........................................................................................................1, 9, 23, 25

Fed. R. Civ. P. 23.1 ........................................................................................................................1

Fed. R. Civ. P. 23.1(b)(3)........................................................................................................3, 10

Fed. R. Civ. P. 57 .......................................................................................................................20

LR 7-1(A)........................................................................................................................................1

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

## I.  LR 7-1(A) CERTIFICATION

Pursuant to LR 7-1(a), defendant Melissa Adams ("Defendant" or "Adams"), certifies that her counsel made a good faith effort to confer on these issues to resolve the issues presented by this motion by conducting conference calls with counsel for plaintiff Reza Motameni ("Plaintiff" or "Motameni"), on August 17, sending a detailed e-mail to Plaintiff's counsel on September 2 and attempting to schedule a follow up conferral call on September 3, 2021, but was unable to do so.[1]

## II.  MOTION

Pursuant to Fed. R. Civ. P 12(b)(6), Adams respectfully moves to dismiss Plaintiff's Second Amended Complaint (ECF No. 4) ("SAC") for failure to comply with the pleading requirements for a shareholder derivative suit as set forth in Fed. R. Civ. P. 23.1, and for failure to state a claim upon which relief can be granted.

Alternatively and additionally, Adams respectfully requests the Court strike portions of paragraphs 27(vi), 32, 37, and paragraphs 1(2), and 6 of the Prayer for Relief from the SAC pursuant to Fed. R. Civ. P 12(f).

This motion is supported by the memorandum below, and the pleadings on file in this action.

## III.  MEMORANDUM OF POINTS AND AUTHORITIES

### A.    Introduction.

This dispute began, in earnest, in July 2019 when Adams asked Plaintiff to buy her out of their co-owned business entities.  Adams made this request because Plaintiff unilaterally suspended the payments Adams had been receiving from Moto Biz, Inc. ("Moto Biz" or "the Company"), pursuant to the parties' longstanding agreement, and made unreasonable demands

---

[1] The September 3 conference call was rescheduled at Plaintiff's counsel's request. However, Plaintiff's counsel could not make himself available for a telephonic conferral until September 8, 2021, the date Adams' responsive pleading was due pursuant to the Court's order August 25, 2021 Order (ECF No. 5).

PAGE 1 – DEFENDANT MELISSA ADAMS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND MOTION TO
STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

that Adams provide capital to various entities they co-own, secure credit in her own name, but for the Company and to personally guarantee and/or personally take on the liabilities of Moto Biz, (and other business entities co-owned by the parties) in order to repair the significant financial damage Plaintiff had caused the Company by his mismanagement, commingling, self-dealing and diversion of funds and assets for personal benefit.

Moto Biz, the company at the heart of this dispute, was initially incorporated by Adams in October 22, 1991.  At that time, Plaintiff and Adams were married and co-managing a hair salon, which ultimately became Moto Biz's original salon location.  Over the years, Adams and Plaintiff expanded Moto Biz's business model to include hair and spa services, and began to conduct business under an assumed business name:  "Dosha and/or Dosha Salon Spa."  Moto Biz currently operates several salon/spa locations in or around Portland, Oregon.

From the time of Moto Biz's formation, Adams and Plaintiff shared ownership of the Company, each holding 50% of Moto Biz's shares.  Adams and Plaintiff also appointed themselves as the sole directors of Moto Biz's designated two-person board.  Adams and Plaintiff agreed that Adams would serve as Moto Biz's President and Plaintiff would serve as Moto Biz's Secretary. Until the filing of his lawsuit, Plaintiff never argued that Adams resigned from her position as an officer of Moto Biz or sought to strip her of her position as an officer or her decision-making power as part of the two-member board of directors.  Indeed, from the outset, Plaintiff has been the point person for certain day-to-day management decisions, but Adams and Plaintiff have shared responsibility for the business direction and other decisions affecting the overall health and welfare of Moto Biz.

When Moto Biz was started in 1991, Plaintiff and Adams always performed different responsibilities for Moto Biz's spa/salon locations.  Plaintiff typically spent time at the corporate office, while Adams spent  time at various salon and spa locations, providing management, training and hair cutting and styling services to Moto Biz's clientele.  However, things changed in 2007, when Adams learned that Plaintiff was having an affair with a Moto Biz employee, Kimberly Johnson, and the parties separated.  In February 2010, Plaintiff and Adams finalized their divorce

PAGE 2 –  DEFENDANT MELISSA ADAMS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND MOTION TO
STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

and agreed, as part of their divorce settlement, to remain in business together.  By 2011, Plaintiff was allowing Ms. Johnson to exert  authority over Adams' role at the Company.  In light of the untenable situation resulting from Ms. Johnson's role at the Company, in late 2011, Adams advised Plaintiff that it was her intention to cease her on-site presence at the salon and spa locations and she intended to relocate to a different state.  By 2012, Adams was no longer conducting services for salon clientele, training employees or managing  the salon spa locations and she was living in California, without any objection from Plaintiff.

Unfortunately, since Adams' relocation to California, Plaintiff has engaged in a series of activities, including commingling of and mismanagement of corporate funds and self-dealing, that have caused Moto Biz to sustain significant losses and burdened the Company with mounting liabilities and risks.  In this lawsuit, Plaintiff seeks to hold Adams personally responsible for Company debts and the losses he caused.  However, as set forth below, Plaintiff has failed to set forth any cognizable claim against Adams which would entitle him to that relief.

Accordingly, Adams respectfully requests the Court dismiss the SAC in its entirety, or the Court should at a minimum, strike the  irrelevant and immaterial allegations from it.  The Court should dismiss the SAC on two grounds.  First, while Plaintiff admits he did not make a prelitigation demand upon the Company, he fails to allege with particularity the reasons why a demand would have been futile, as required by Fed. R. Civ. P. 23.1(b)(3) and Oregon law.  Second, in addition to failing to comply with the demand requirements for a derivative action, the Court should also dismiss the SAC in its entirety for failure to state a claim upon which relief can be granted.  Specifically, Plaintiff has failed to allege sufficient facts in support of his claims to show Adams breached her fiduciary duties of loyalty and care to the Company, or that Adams even owed Plaintiff a special fiduciary duty by virtue of their positions as shareholders.  Indeed, based on Plaintiff's own allegations, Plaintiff is the controlling shareholder and it is he that owes fiduciary duties to Adams, not vice versa.  Therefore, Plaintiff's second and third causes of action premised on a breach of duty of care and breach of loyalty are legally deficient.  Likewise,  Plaintiff's fourth and fifth causes of action for declaratory and injunctive relief are based on the same insufficient

PAGE 3 –  DEFENDANT MELISSA ADAMS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND MOTION TO
STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

allegations and thus, should also be dismissed on the same grounds.  Similarly, Plaintiff has failed to tie his cause of action claim for statutory remedies pursuant to Or. Rev. Stat. § 60.952(2) to the breach of any fiduciary duty by Adams, or allege facts showing Adams engaged in the type of oppressive conduct justifying the remedies he seeks.  Accordingly, the entire SAC should be dismissed with prejudice.

In the event the Court declines to dismiss the SAC entirely, the Court should strike the clearly irrelevant and immaterial allegations from it, including Plaintiff's claim for attorneys' fees which is purportedly based on a provision of the Company's Bylaws that makes no reference whatsoever to attorneys' fees, and his claim for allegedly past-due salaries from the Company for which he inexplicably seeks a judgment against Adams, personally.

## B.    Procedural History.

On or about April 20, 2021, Plaintiff initiated this action by filing a Complaint against Adams and nominal defendant Moto Biz in the Circuit Court of the State of Oregon for the County of Multnomah.  (ECF No. 1 at 6.)  On or about July 6, 2021, Plaintiff filed a First Amended Complaint ("FAC"), also against Adams and Moto Biz.  (ECF No. 1 at 19.)  Adams filed a Notice of Removal to this Court on August 11, 2021.  (ECF No. 1.)

On August 17, 2021, the parties met and conferred via telephone and Plaintiff agreed to amend the FAC and file the SAC on or before August 23, 2021.  (*See* ECF No. 3.)  In light of this agreement, on August 17, 2021, Adams filed an Unopposed Motion for Extension of Time to File a Responsive Pleading ("MOET").  (ECF No. 3.)

On August 24, 2021, Plaintiff filed the SAC.  (ECF No. 4.)  In the SAC, Plaintiff asserts the following causes of action against Adams:  (1) Deadlock and Oppression Close Corporation Remedies Under Or. Rev. Stat. § 60.952; (2) Breach of the Duty of Care; (3) Breach of the Duty of Loyalty; (4) Declaratory Relief; and (5) Injunctive Relief. (SAC ¶¶ 23-40.)

On August 25, 2021, the Court issued an order granting Adam's MOET and ordering Adams to file her responsive pleading on or before September 8, 2021.  (ECF No. 5.)  This motion followed.

PAGE 4 –  DEFENDANT MELISSA ADAMS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND MOTION TO
STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

### C.    Statement of Alleged Facts.

**1.    Moto Biz is formed.**  In October 1991, Plaintiff and Adams, then married, formed Moto Biz to operate a salon business.  (SAC ¶¶ 4-5.)  Plaintiff acknowledges that at the time Moto Biz was incorporated, he and Adams were the Company's only two shareholders and that they were elected to serve as the only two members of Moto Biz's board of directors.  (SAC ¶ 4.) Plaintiff concedes that at the time Moto Biz was incorporated, "[b]y agreement of the parties, [Adams] was appointed as the President of the Company, and Plaintiff was appointed as the Secretary of the Company."  (SAC ¶ 5.)  Plaintiff also admits that "[t]hese positions were memorialized in the Company's internal documents."  (*Id.*)  Plaintiff claims, however, that "despite these formal appointments," since Moto Biz was incorporated "he was put in charge of operating the business and making all business related decisions."  (*Id.*)

### 2.    Plaintiff and Adams Divorce.

In 2009[2], Plaintiff and Adams divorced, but, according to Plaintiff, agreed to continue to co-own and operate Moto Biz.  Despite previously alleging he has been in charge of the Company's operations and all business decisions from the date of incorporation, Plaintiff claims he actually did not take over managing the Moto Biz's affairs until 2011, when, due to discord between the parties, he and Adams "agreed that Plaintiff would manage the Company's operations."  (SAC ¶¶ 7-8.)  Plaintiff argues that the parties' 2011 agreement "effectively resulted in [Adams'] resignation from her role as the Company's President and Plaintiff's appointment" to that role. (SAC ¶ 8.)  Soon thereafter, in 2012, Adams moved to California.  (*Id.*)

### 3.    The Company's Operations After the Parties' Divorce.

According to the SAC, from 2011 to 2019, while Plaintiff "managed the Company's business affairs by himself," he also "kept [Adams] regularly informed of the Company's status, and communicated with [Adams] regarding large decisions and documents requiring signatures

---

[2] According to their divorce decree, Plaintiff and Adams divorced in February 2010, not 2009.

PAGE 5 –  DEFENDANT MELISSA ADAMS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND MOTION TO
STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

from both principals." (SAC ¶ 9.)  Plaintiff claimed he did so because while Adams "had resigned her position as president, [she] retained her position as a director of the Company."  (*Id.*)

Plaintiff admits that since the Company was formed, he and Adams "were both compensated equally, through draws or distributions paid by the Company." (SAC ¶ 17.)  Plaintiff further concedes that these "partnership payments" continued after the parties' divorce, "even though [Adams] had moved to California" and was, according to Plaintiff, "no longer participating in the management of the Company."  (*Id.*).  Plaintiff alleges that he "refrained from taking draws at times when the Company was not profitable."  (*Id.*)  But, he later complains that Adams "has been paid approximately $90,000 more for draws than Plaintiff * * *."  (*Id.*)  Contradicting himself yet again, Plaintiff then alleges he has never "been paid a salary, nor has he been otherwise compensated for his management efforts."  (*Id.*)

Beginning in 2016, Plaintiff admits that "the Company's income and cash flow were significantly reduced" due, in part, to the destruction of the Company's Northwest Portland location.  (SAC ¶¶ 10-14.)  Plaintiff then waited four years, until 2020, to hire counsel to pursue insurance coverage claims for the Company related to this loss.  (SAC ¶ 16.)  Plaintiff, who claims to have been solely responsible for all of the Company's business affairs at the time, admits that the Company "continued to struggle financially" through 2020.  (SAC ¶¶ 14-16.)  Despite the Company's struggles, Plaintiff concedes he waited until June 2019 to finally "cause[] the Company to cease paying draws to himself and [Adams] due to waning profits."  (SAC ¶ 18.)  Plaintiff alleges that after his unilateral decision to suspend payments owed to Adams, Adams "became difficult and obstructive and began to actively oppose Plaintiff's business decisions" as set forth below.  (SAC ¶ 18.)

**4.     Adams' Allegedly Wrongful Conduct and Damages Caused by Same.**

Despite alleging throughout the SAC that he was solely responsible for all of the Company's business decisions and operations since Moto Biz's incorporation, and admitting that the Company has struggled financially since at least 2016, Plaintiff blames Adams' "refusals to sign critical documents" in 2020 for the Company's current financial state.  Specifically, Plaintiff

PAGE 6 –  DEFENDANT MELISSA ADAMS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND MOTION TO
STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

alleges that Adams violated her fiduciary duties of care and loyalty to the Company by: (1) allegedly refusing, "without a legitimate business purpose," to sign documents instructing the Company's counsel to use insurance proceeds, recovered in connection with the destruction of the Company's Northwest Portland location, to pay the Company's outstanding invoices and return the remaining balance to the Company, (2) allegedly refusing, "without a legitimate business purpose," to provide a copy of her personal identification in connection with Company's efforts to obtain a second-round PPP loan; and (3) continuing to assert she is the Company's president to "interfere with Plaintiff's ongoing management of the Company" and objecting to "all business decisions made by Plaintiff, to leverage the Company's financial situation for the purpose of forcing Plaintiff to make an offer to repurchase [Adams]' stock." (SAC ¶¶ 29, 30(a)-(c), 35, 36(a)-(b).)  Plaintiff alleges Adams' decisions in 2020 "were done without a legitimate business purpose" and instead, were done "to distract Plaintiff from operating the business" and "were designed to block decision-making for the Company, so that [Adams] could then leverage the Company's precarious state to obtain compensation or a favorable buyout of her shares in the Company." (SAC ¶ 20.)  As a result of Adams' allegedly wrongful conduct, Plaintiff alleges that the Company is entitled to charge Adams for the following company-related financial obligations:

- "[D]amages in excess of $800,000" allegedly caused by Adams' refusal to provide her photo identification to verify her status as a shareholder of the Company, which was required to obtain a forgivable second-round PPP loan" for the Company (SAC ¶ 31(a)); and

- Compensation from Adams for any interest or fees that accrued as a result of her alleged failure to authorize timely release of the insurance proceeds held in trust ("Trust Funds") "in an amount determined at trial, but believed to exceed $5,000 (SAC ¶ 31(b)).

Despite contradicting himself throughout the SAC regarding whether or not he ever received payments from the Company and his admission that the Company has not been profitable under his management, Plaintiff further claims he is entitled to "past due salary from the Company in the amount of $150,000 per year [* * *] for the period of time Plaintiff has been actively managing the Company's business affairs alone, after [Adams] relocated to California."

PAGE 7 –  DEFENDANT MELISSA ADAMS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND MOTION TO
STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

(SAC ¶ 27(vi).)  Plaintiff admits his allegedly past-due salary is a Company liability and argues it should be paid to him before the shareholders [Adams] receive any further distributions on account of ownership.  (*Id.*)

In the SAC, Plaintiff alleges he "made numerous demands to [Adams] via email in January, February and March of 2021" but does not allege, with any specificity, what those demands were for.  (SAC ¶ 21.)  Rather, Plaintiff simply alleges in a conclusory fashion that the parties remain "unable to resolve their differences, and the directors and shareholders remain deadlocked."  (*Id.*)

With respect to "the derivative claims against [Adams] in this action," Plaintiff admits that "a demand was not made upon the Company prior to filing, because such a demand would have been futile."  (SAC ¶ 22.)  In support of this futility allegation, Plaintiff alleges that he and Adams are the Company's only directors and shareholders and that Adams "is not disinterested, nor can she act independently with respect to the claims alleged against her * * *."  (*Id.*)

## D.    Argument.

### 1.    Applicable Legal Standards.

**Motions to Dismiss**.  To survive a Rule 12(b)(6) motion, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.  While the court must assume all factual allegations in the complaint as true and draw all reasonable inferences arising from those facts, the court must disregard all legal conclusions, even if they are couched as factual allegations.  *Id.* at 678-79; *Doe I v. Wal-Mart Inc.*, 572 F.3d 677, 683 (9th Cir. 2009) (noting that a plaintiff must do more than offer naked "labels and conclusions, and a formulaic recitation of the elements of a cause of action") (quoting *Twombly*, 550 U.S. at 555).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  Dismissal is proper when the complaint does not make out a cognizable legal theory or does not allege sufficient facts to

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

support a cognizable legal theory.  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

Generally, district courts may not consider material outside the pleadings when assessing the sufficiency of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  However, the incorporation-by-reference doctrine is an exception to this rule that permits district courts to consider materials outside a complaint.  *See Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998 (9th Cir. 2018).  Incorporation by reference is a judicially created doctrine that allows the court to treat certain documents as though they are part of the complaint itself if the complaint refers extensively to the document or the document forms the basis of the Plaintiff's claim.  See *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  "The doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."  *Parrino v. FHP, Inc*., 146 F.3d 699, 706 (9th Cir. 1998), superseded by statute on other grounds as recognized in *Abrego Abrego v. Dow Chem. Co*., 443 F.3d 676, 681–82 (9th Cir. 2006) (observing "the policy concern underlying the rule: Preventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based").  Likewise, "the court need not * * * accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Sprewell v. Golden State Warriors, Inc.*, 266 F.3d 979, 988 (9th Cir. 2001).

**Motions to Strike**.  Under Fed. R. Civ. P. 12(f), a party may make a motion to strike from a pleading "any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  "'[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.'"  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994).  On a motion to strike, the court must view the facts most favorably to the non-moving party.  *Bank Tejarat v. Varsho–Saz*, 723 F. Supp. 516, 517 (C.D. Cal. 1989).

PAGE 9 –  DEFENDANT MELISSA ADAMS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND MOTION TO
STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

2.      **The SAC Must Be Dismissed Because Plaintiff Has Failed to Meet the Pleading Standards For Derivative Suits.**

To proceed with a derivative action under Fed. R. Civ. P. 23.1(b)(3), plaintiff must "state with particularity:  (A) any effort by the plaintiff to obtain the desired action from the directors * * *; and (B) the reasons for not obtaining the action or not making the effort."  In addition, because demand requirements are substantive rather than merely procedural, this Court must evaluate the sufficiency of Plaintiff's allegations under the substantive law of Oregon's pre-suit demand requirement.  *See Kamen v. Kemper Fin. Servs., Inc.*, 500 US 90, 96-97, 108-09 (1991) ("*Kamen*") (substantive state-law demand requirement incorporated into Fed. R. Civ. P. 23.1); *Potter v. Hughes*, 546 F3d 1051, 1054 n.1 (9th Cir. 2008) ("*Potter*") ("Rule 23.1 imposes only a pleading requirement with regard to demand; the substantive demand requirement is an issue of state law."); *Id.* at 1055 ("Pursuant to Rule 23.1, a putative derivative plaintiff can initiate a derivative action only if he or she makes an adequate demand on the Board under applicable state law.");  *Sommers v. Lewis*, 641 F. Supp. 2d 1151, 1156 (D Or 2009) ("Demand futility is determined under the law of the company's incorporating state--in this case, Oregon.").  Oregon law is clear that a shareholder seeking to bring a derivative suit on behalf of a corporation must first demand that the board of directors address the alleged harm.  *See* Or. Rev. Stat. § 60.261(2); *Crandon Capital Partners v. Shelk*, 219 Or. App. 16, 29-30 (2008) ("*Crandon*").  If a shareholder does not make demand on the board, Fed. R. Civ. P. 23.1(b)(3) and Oregon law both require that the shareholder plead with particularity the reasons why demand would have been futile under state law.  *See Potter*, 546 F.3d at 1056 ("failure to meet the demand requirement may be excused if the facts show that demand would have been futile.").  As the Oregon Court of Appeals explained: The rationale of Rule 23.1 is two-fold.  On the one hand, it would allow a plaintiff to proceed with discovery and trial if the plaintiff complies with this rule and can articulate a reasonable basis to be entrusted with a claim that belongs to the corporation.  On the other hand, the rule does not permit a stockholder to cause the corporation to expend money and resources in discovery and trial in the stockholder's quixotic pursuit of a purported corporate claim based solely on conclusions, opinions or speculations.

*Crandon*, 219 Or. App. at 30 (quoting *Brehm v. Eisner*, 746 A.2d 244, 255 (Del. 2000)).

PAGE 10 –DEFENDANT MELISSA ADAMS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

> The demand requirement serves a salutary purpose. First, by requiring exhaustion of intracorporate remedies, the demand requirement invokes a species of alternative dispute resolution procedure which might avoid litigation altogether. Second, if litigation is beneficial, the corporation can control the proceedings. Third, if demand is excused or wrongfully refused, the stockholder will normally control the proceedings.

*Brehm*, 746 A.2d at 255 (quoting *Grimes v. Donald*, 673 A.2d 1207, 1216 (Del. 1996) (discussing pleading requirement for a derivative action)).

Oregon courts have adopted the two prong test set forth in *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984) (*Aronson*), to determine whether a plaintiff's failure to comply with the prelitigation demand requirement should be excused. *See Crandon,* 219 Or. App. at 30.[3] Under the *Aronson* test, futility can be shown one of two ways: "a plaintiff must be able to articulate particularized facts showing that there is a reasonable doubt either that (1) the directors are disinterested and independent for purposes of responding to the demand or (2) the challenged transaction was otherwise the product of a valid exercise of business judgment. If either prong is satisfied, demand is excused." *Id; see also Plumbers Loc. No. 137 Pension Fund v. Davis, No.* CIV. 03:11-633-AC, 2012 WL 104776, at *4 (D. Or. Jan. 11, 2012), report and recommendation adopted, No. 3:11-CV-00633-AC, 2012 WL 602391 (D. Or. Feb. 23, 2012).

Here, Plaintiff admits he has not made a demand upon Moto Biz's board of directors. (SAC ¶ 22.) Thus, if Plaintiff is to proceed with this action, he must allege particularized facts sufficient to create a reasonable doubt that Adams is not independent and disinterested, or that Adams' decisions were not a valid exercise of business judgment. *See Beam v. Stewart*, 845 A.2d 1040, 1049 (Del. 2004) ("*Beam*"); *see also Wood v. Baum*, 953 A.2d 136 (Del. 2008). Because Plaintiff has failed to do either, the SAC should be dismissed, in its entirety.

---

[3] The Oregon courts look to Delaware in applying Oregon's prelitigation demand requirement. *See Crandon*, 219 Or. App. at 29-30; *Sommers*, 641 F. Supp. 2d at 1156 ("Oregon law is undeveloped in this area, so the parties look to Delaware law."). Delaware cases concerning derivative claims have been cited with approval and relied on by the Oregon courts that have addressed similar issues. *See, e.g.*, *Crandon*, 219 Or. App. at 29-30.

PAGE 11 –DEFENDANT MELISSA ADAMS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

a.     **Plaintiff fails to allege facts raising reasonable doubt that Adams is an independent and disinterested director.**  The first prong of the *Aronson* test considers whether a shareholder has pled with particularity facts that establish the director is not independent or disinterested.  "A director will be considered unable to act objectively with respect to a pre-suit demand if he or she is interested in the outcome of the litigation or is otherwise not independent." *Beam*, 845 A.2d at 1049.  This interest may arise where the director will derive a personal benefit or suffer a personal detriment from the board's action.  *Id*.  The proper focus of the inquiry is "whether the director's decision is based on the corporate merits of the subject before the board, rather than extraneous considerations or influences."  *Id.; see also In re J.P. Morgan*, 906 A.2d at 821 ("Disinterested means that directors can neither appear on both sides of a transaction nor expect to derive any personal financial benefit from it in the sense of self-dealing, as opposed to a benefit which devolves upon the corporation or all stockholders generally."); s*ee also Postorivo v. AG Paintball Holdings, Inc., Nos.* 2991-VCP, 3111-VCP, 2008 WL 553205, at *7 (Del. Ch. Feb. 29, 2008) ("*Postorivo*") ("A plaintiff can establish that a specific director is not independent by alleging facts that suggest the director is dominated by a closer personal or familial relationship or that the director is beholden to an interested director.  This is necessarily a detailed, fact-intensive, director-by-director analysis.").

Distilled to its essence, Plaintiff's lawsuit is based entirely on two disagreements between the Company's directors regarding matters involving the use and management of the Company's finances.  Plaintiff sued Adams because she disagreed with Plaintiff regarding whether the Company should seek a second PPP Loan and how to address a Company liability that was incurred by Plaintiff, without Adams' knowledge or consent.  (SAC ¶¶ 28-37.)  Plaintiff alleges a demand on the Company before filing his lawsuit would have been futile because he and Adams are the Company's only directors and shareholders, and Adams "is not disinterested, nor can she act independently with respect to the claims alleged against her herein."  (SAC ¶ 22.)  However, without more, these conclusory allegations are insufficient to rebut the presumption that Adams is a disinterested and independent director.

PAGE 12 –DEFENDANT MELISSA ADAMS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO STRIKE PORTIONS OF SAME

719105.0001/8655015.5

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

With respect to whether Adams is disinterested, Plaintiff does not allege anywhere in the SAC that Adams appeared on both sides of his proposed transactions, or, that she stood to derive any personal financial benefit or suffer a personal detriment as a result.  Rather, he alleges only that the Company stood to derive a benefit - in the form of a second PPP Loan and a reduced liability related to an outstanding legal fee invoice.  (SAC ¶¶ 28-37.)  However, a benefit upon the corporation or all shareholders generally is not a personal benefit to a single director sufficient to create the type of self-interest that triggers the demand futility exception.  *See In re J.P. Morgan*, 906 A.2d at 821.  To the extent Plaintiff alleges Adams cannot be disinterested because she may face liability as a result of his lawsuit, that is also insufficient.  Merely naming a director as a defendant is not enough to excuse a prelitigation demand.  *See Spiegel v. Buntrock*, 571 A.2d 767, 774 n.14 (Del. 1990) ("[T]he fact that all directors are named as defendants in a derivative complaint is not determinative of their lack of independence."); *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 121 (Del. Ch. 2009) ("Demand is not excused solely because the directors would be deciding to sue themselves.").[4]  Thus, Plaintiff has failed to allege facts sufficient to show Adams was disinterested, thereby excusing a prelitigation demand.

Plaintiff has also failed to allege facts raising a reasonable doubt that Adams is an independent director.  A director is considered lacking in independence where a director is "so 'beholden' to an interested director * * * that his or her 'discretion would be sterilized.'"  *Beam*, 845 A.2d at 1050.  Plaintiff does not even attempt to explain why Adams is allegedly "lacking independence" in the SAC.[5]  While Plaintiff states that Adams "cannot act independently," Plaintiff has made no factual allegations whatsoever to support this conclusory statement, let alone

---

[4] As the Delaware Court of Chancery held: "[D]emand will be excused based on a possibility of personal director liability only in the rare case when a plaintiff is able to show director conduct that is 'so egregious on its face that board approval cannot meet the test of business judgment, and a substantial likelihood of director liability therefore exists.'" *Citigroup*, 964 A.2d at 121 (quoting *Aronson*, 473 A.2d at 815).  Here, the SAC is devoid of any allegations of conduct on the part of Adams that could be deemed wrongful, let alone egregious.

[5] In fact, under Plaintiff's theory of his case, it is Adams' independence and refusal to be beholden to Plaintiff that gives rise to his claims in the lawsuit.

PAGE 13 –DEFENDANT MELISSA ADAMS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND MOTION TO
STRIKE PORTIONS OF SAME

the type of particularized factual allegations that, taken as true, could show that Adams was beholden to any other director, person or entity, and was unable to exercise discretion in her capacity as a director.  Again, Plaintiff's argument presumes rather than pleads an element necessary to maintain his claim.  Consequently, Plaintiff cannot avoid the pre-suit demand requirement on the ground that a majority of board members were lacking in independence or unduly beholden to an interested board member.

        **b.**    **Plaintiff fails to allege facts raising a reasonable doubt that Adams' decisions were the product of a valid business judgment.**  Plaintiff has also failed to satisfy the second prong of the *Aronson* test which requires him to allege facts that raise a reasonable doubt that the challenged conduct was the product of a valid exercise of business judgment.  "The business judgment rule is a 'presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'"  *Crandon*, 219 Or. App. at 31 (quoting *Aronson*, at 812).  To adequately defeat the business judgment presumption, a plaintiff "must allege particularized facts that raise doubt about whether the challenged transaction is entitled to the protection of the business judgment rule.  Specifically, the 'plaintiffs must plead particularized facts sufficient to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision.'"  *In re J.P. Morgan*, 906 A.2d at 824 (internal citations omitted.) As the Delaware Chancery Court has stated: "This is a high standard to satisfy. * * * '[A] plaintiff who seeks to excuse demand through [this test] * * * faces a task closely akin to proving that the underlying transaction could not have been a good faith exercise of business judgment.'"  *Postorivo,* 2008 WL 553205, at *8 (Del. Ch. Feb. 29, 2008).

       Here, Plaintiff alleges Adams breached the duty of loyalty and the duty of care she owed to the Company because she disagreed with Plaintiff, "without a legitimate business purpose," regarding whether Moto Biz should seek a second PPP Loan and regarding the manner in which the Company should address a liability that was incurred without her knowledge.  (SAC ¶¶ 30 (a)-

PAGE 14 –DEFENDANT MELISSA ADAMS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND MOTION TO
STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

(c), 33-36.)  However, simply alleging in a conclusory fashion that Adams' decisions were made "without a  legitimate business purpose" is not sufficient to create a reasonable doubt that Adams acted honestly and in good faith, and with adequate information when she made those decisions. Specific allegations, not conclusory statements, are required  to overcome the presumption.  *See*, e.g., *Ryan v. Gifford*, 918 A.2d 341, 354 (Del. 2007).  Plaintiff does not allege anywhere in the SAC that Adams acted in bad faith when she disagreed with Plaintiff's proposed actions or that she was not adequately informed when she refused his requests.  *C.f. Crandon,* 219 Or. App. at 38.  Nor does Plaintiff allege that Adams' decisions directly defied or violated any Moto Biz bylaw, any shareholder agreement, or any other applicable legal requirement which would support an inference of bad faith.  In the context of pre-suit demand, the burden is upon the plaintiff in a derivative action to overcome the presumption of good faith.  *See Beam,* 845 A.2d at 1048–49 (Del. 2004.)  Plaintiff's conclusory allegation that Adams disagreed with him "without a legitimate business purpose," without more, is not enough to meet that burden.

Because Plaintiff has failed to demonstrate that he should be excused from the pre-suit demand requirements under either *Aronson* prong, the SAC should be dismissed in its entirety on those grounds.

### 3.    Plaintiff Fails to State a Claim Upon Which Relief May Be Granted.

In addition to failing to meet the pleading standards for a derivative action, Plaintiff has failed to state a claim upon which relief can be granted with respect to any of the five causes of action he asserts against Adams in the SAC.  Accordingly, the SAC should also be dismissed entirely on those grounds.

> **a.    Plaintiff fails to state a claim for breach of fiduciary duty**.  Plaintiff alleges that Adams owed fiduciary duties—the duty of care and the duty of loyalty—to the Company as a director and to plaintiff as a shareholder of Moto Biz, and that she breached those duties.  (SAC ¶¶ 28-37.)  Under Oregon law, to state a claim for breach of fiduciary duty, plaintiff must prove: "(1) the existence of a fiduciary relationship between the parties; (2) a breach of one or more of the fiduciary duties arising out of that relationship; and (3) damage to the plaintiff

PAGE 15 –DEFENDANT MELISSA ADAMS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

resulting from a breach of one of more of those duties. *Spada Properties, Inc. v. Unified Grocers, Inc.,* 121 F. Supp. 3d 1070,1090 (D. Or. 2015.) (citing *Evergreen West Business Center, LLC v. Emmert,* 254 Or. App. 361, 367 (2012) *rev'd on other grounds,* 354 Or. 790 (2014).  As discussed below, Plaintiff fails to allege sufficient facts showing Adams breached the fiduciary duties she owed to the Company in her capacity as director, or showing that Adams even owed Plaintiff any special duty as a shareholder.  Accordingly, his claims for breach of the duty of loyalty and breach of the duty of care should both be dismissed.

> **(1)      Plaintiff fails to allege facts sufficient to establish Adams breached the fiduciary duties she owed to the Company as a director.**  Plaintiff alleges Adams breached the fiduciary duties of care and loyalty that she owed to Moto Biz in her capacity as a director.   (SAC  ¶¶ 28-32.)   Oregon courts have regularly held that derivative actions by shareholders against directors require an allegation of seriously wrongful conduct.  *See Bernards v. Summit Real Estate Management, Inc.*, 229 Or. App. 357, 364.  Unless a plaintiff's complaint alleges facts showing that a director's action was not the exercise of business judgment—i.e. it was taken in bad faith, or amounted to gross negligence, fraud, or willful or wanton misconduct— the complaint does not state a claim.  *See Id.* (explaining "the plaintiffs' complaints, as derivative actions, are conditioned by the business judgment rule. That means that they must state ultimate facts sufficient to overcome the presumption that member defendants acted for the benefit of the LLCs-that, in other words, they acted in bad faith, were grossly negligent, or engaged in fraud or willful or wanton misconduct."); *Naito v. Naito*, 178 Or. App. 1, 27-28 (2001) ("Courts are generally reluctant to interfere with the exercise of business discretion by the officers and directors of a corporation. * * * Although courts will not ignore corporate misconduct, it is not their role to second-guess business decisions that are within the range of reasonableness.").

As set forth above, Plaintiff's allegations are insufficient to overcome the business judgment presumption.  Plaintiff does not allege facts showing that Adams acted in bad faith or that her decisions opposing of Plaintiff's proposals amounted to gross negligence, fraud, or willful or wanton misconduct.  Rather, he alleges only that Adams disagreed with him regarding whether

PAGE 16 –DEFENDANT MELISSA ADAMS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

the Company should seek a second PPP Loan and how to address a Company liability that was incurred without Adams knowledge.  (SAC ¶¶ 30(a)-(b), 35-36(a)-(b).)  Plaintiff also admits that Adams is currently serving as a director of Moto Biz and that she was serving as a director when she made the decisions he complains of.  (SAC ¶¶ 9, 29, 34.)  While Plaintiff may be frustrated that Adams disagreed with his proposals, there is nothing inherently "wrongful"[6] about one director disagreeing with another.  Indeed, Adams was simply exercising her right to participate in corporate governance and "manage the business and affairs of the corporation" as she has the express authority to do as a director under the Article III of the Company's Bylaws.[7]  *See Stringer v. Car Data Sys., Inc.*, 108 Or. App. 523, 528-529, opinion modified on reconsideration, 110 Or. App. 14 (1991), aff'd, 314 Or. 576 (1992) ("*Stringer*"); *See also Locati v. Johnson,* 160 Or. App. 63, 68–69 (1999) ("*Locati I*"); *S*ee Declaration of Janet Larsen in Support of Defendant Melissa Adams' Motion to Dismiss Second Amended Complaint and Motion to Strike Portions of Same ("Larsen Decl.") ¶ 2, Ex. A at 2.)  A disagreement amongst directors on a corporate board, without more, does not give rise to a breach of fiduciary duty claim.  *See Stringer,* 108 Or. App. at 527 ("The question is whether a given shareholder or small number of shareholders has the requisite power to dictate or dominate corporate decisions, not whether a group of small shareholders

---

[6] The ordinary meaning of "wrongful" is "full of wrong: INJURIOUS, UNJUST, UNFAIR." *Webster's* at 2642.  More specifically, it has a well-understood meaning in the law of torts with regard to interference with legal interests.  *See Stull v. Hoke*, 326 Or. 72, 78 (1997) (holding that, if a statutory term has a well-defined legal meaning, then we give it that meaning).  Conduct generally is "wrongful" if it is carried out in pursuit of an improper motive or by improper means. *See, e.g., Empire Fire & Marine Ins. v. Fremont Indemnity*, 90 Or. App. 56, 62 (1988) (defining "wrongful" interference with contractual relations in those terms).  "Improper means" must be independently wrongful by reason of statutory or common law, beyond the mere fact of the injury complained of.  *Conklin v. Karban Rock, Inc*., 94 Or. App. 593, 601, rev den, 307 Or. 719 (1989).  Improper means, for example, include "violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation and disparaging falsehood." *Id.*

[7] The Court may consider documents in ruling on a motion to dismiss without converting the motion into one for summary judgment if the complaint refers extensively to the document or the document forms the basis of the Plaintiff's claim.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).  Plaintiff refers to the Company's Bylaws throughout the SAC and expressly acknowledges the Plaintiff and Adams' positions with the company were "memorialized in the Company's internal documents."  (*See* SAC ¶¶ 5,27, 32, 37.)  Accordingly, the Court should incorporate the Company's Bylaws and its Articles of Incorporation into the SAC and properly consider the terms of both when ruling on Adams' motion.

PAGE 17 –DEFENDANT MELISSA ADAMS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

happens to have outvoted another group on a particular occasion. Plaintiffs' allegations show nothing more than the latter fact, and the assertions of nefarious motives in the complaint do not alter that.").

Furthermore, a claim based on a breach of the duty of loyalty specifically requires an allegation of a personal financial conflict or that the directors "knowingly and completely failed to undertake their responsibilities." *See Lyondell Chem. Co. v. Ryan*, 970 A.2d 235, 243-44 (Del. 2009); s*ee also Lindland v. United Business Investments*, 298 OR. 318, 322 n.2, 327 (1984) (explaining a breach of the duty of loyalty is established by proof that the agent had a conflict of interest or was self-dealing.).  "The term 'conflict of interest' encompasses situations in which the agent is acting entirely substantially for the agent's own benefit (i.e. self-dealing) and situations in which the agent is acting on behalf of a third-party whose interest is adverse to that of the principal (i.e. conflict of interest)." *Id.*  Here, Plaintiff failed to allege anywhere in the SAC that Adams has a conflict of interest or is engaging in self-dealing.  He does not allege that Adams was acting on behalf of a third-party when she made her decisions, nor does he allege that Adams' decision not to burden Moto Biz with an additional liability in the form of a second PPP Loan or pay outstanding bills (that were incurred surreptitiously and without her knowledge and consent) benefited her in any way.  Plaintiff speculates that Adams' conduct was "designed to block-decision making for the Company so that [Adams] could then leverage the Company's precarious state to obtain compensation or a favorable buyout of her shares" and "force Plaintiff to make an offer to purchase [Adams]' stock." (*See* SAC ¶¶ 20, 30(c).)  However, accepting Plaintiff's own allegations as true, the value of Adams' shares in the Company were only diminished as a result of her decisions, thereby further reducing the price at which her shares could be bought out, thereby bringing Adams no personal benefit whatsoever.  *See In re J.P. Morgan*, 906 A.2d at 821 (a benefit upon the corporation or all shareholders generally is not sufficient to create the type of self-interest that triggers the demand futility exception.).  Thus, in addition to failing to allege the type of a grossly negligent, fraudulent, willful or wanton conduct generally necessary to state a valid derivative claim for breach of fiduciary duty, Plaintiff has also failed to allege the requisite self-dealing to

PAGE 18 –DEFENDANT MELISSA ADAMS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

support a breach of the duty of loyalty claim.  Accordingly, Plaintiff's claims for the breach of the duty of loyalty and the duty of care must be dismissed.

> **(2)     Plaintiff fails to allege facts showing Adams owed him a special duty as a shareholder.**  Majority shareholders in a close corporation owe fiduciary duties of loyalty, good faith, fair dealing, and full disclosure to minority shareholders.  *See, e.g., Zidell v. Zidell, Inc*., 277 Or. 413, 418 (1977) ("*Zidell*"); *Naito v. Naito*, 178 Or. App. 1, 20 (2001) ("*Naito*").  However, only an individual who owns a majority of the voting shares, or shareholders who, for other reasons, have domination or control, owe fiduciary obligations to the minority.  *See, e.g., Zidell*, 277 Or. at 418 ("those in control of corporate affairs have fiduciary duties of good faith and fair dealing toward the minority shareholders"); *Naito,* 178 Or. App. at 20 n.26, 35 P.3d 1068 ("[t]he proper focus is on those who are actually in control of the corporation, whatever their specific roles*"); Stringer,* 108 Or. App. at 527 ("[t]he question is whether a given shareholder or small number of shareholders has the requisite power to dictate or dominate corporate decisions.").  In order to prove that Adams exercised control over Moto Biz's corporate affairs, Plaintiff must allege either that he was "(1) an individual who owns a majority of the shares or who, for other reasons, has domination or control of the corporation," or that he was "(2) a member of a small group of shareholders who collectively own a majority of shares or otherwise have that domination or control."  *Locati I*, 160 Or. App. at 69.

Here, Plaintiff admits that he and Adams have shared ownership of the Company, from the time of Moto Biz's formation, each holding 50 per cent of Moto Biz's shares.  (SAC ¶¶ 2-3).  Thus, Adams cannot be considered a controlling shareholder based on pure ownership interest alone.  Nor is Adams a controlling shareholder by reason of domination or control over the Company.  While Plaintiff alleges that "as a 50% shareholder and a director, [Adams] exerts significant control over the Company, by objecting to actions Plaintiff intends to take to benefit the Company," the particularized factual allegations in the rest of the SAC contradict this statement entirely.  (*See* SAC ¶ 26.)  Throughout the SAC, Plaintiff admits that he is not only currently responsible for the Company's day-to-day operations and all of its business decisions, but has

PAGE 19 –DEFENDANT MELISSA ADAMS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

apparently been in control of such matters since Moto Biz's incorporation in 1991.  (SAC at ¶¶ 2-3, 5, 8-9.)  Thus, based on Plaintiff's own allegations he has had "the requisite power to dictate or dominate corporate decisions" for the Company for nearly thirty years.  Plaintiff even admits that he exercised his power and control over the Company in 2019 to unilaterally suspend partnership payments to Adams, payments Plaintiff admits Adams had been receiving since Moto Biz was formed.  (SAC ¶¶ 17-18.)  In other words, Plaintiff is the controlling shareholder of Moto Biz, not Adams, and he was the controlling shareholder when Adams disagreed with Plaintiff regarding whether the Company should seek a second PPP Loan and how to address a Company liability that was incurred without Adams knowledge.  Plaintiff cannot state a claim against Adams, who is clearly the non-controlling shareholder based on Plaintiff's own allegations, for a breach of a fiduciary duty she did not owe to him.  *See Stringer,* 108 Or. App. at 528-529 ("Under the allegations, if defendants owed no fiduciary duty to plaintiffs, they did nothing unlawful.  They simply exercised the rights of shareholders to dispose of their stock and to participate in corporate governance.").  Accordingly, Plaintiff's claims for breach of the duty of loyalty and the duty care should be dismissed on these grounds as well.

> **b.    Plaintiff fails to state a claim for equitable relief.**  Plaintiff's claims for declaratory relief and injunctive relief are based on the same conduct that forms the basis of his breach of fiduciary duty claims and thus, suffer from the same fatal defects.  As set forth above, Plaintiff has failed to plead a breach of fiduciary duty claim against Adams, either as a director or as a shareholder.  Thus, he cannot state a valid claim for equitable relief based upon that same conduct.  Additionally, Plaintiff also fails to state a valid claim for declaratory relief because he does not ask the Court to issue a declaration to terminate a justiciable controversy.[8]  Rather, he

---

[8] Under 28 U.S.C. § 2201(a), "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  A declaratory judgment is appropriate when it will terminate a controversy "of a justiciable nature, thus excluding an advisory decree upon a hypothetical state of facts."  *See* Fed. R. Civ. P. 57; *Ashwander v. Tennessee Valley Authority,* 297 U.S. 288 (1936).  "When declaratory relief will not be effective in settling the controversy, the court may decline to grant it."  Fed. R. Civ. P. 57.

PAGE 20 –DEFENDANT MELISSA ADAMS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO STRIKE PORTIONS OF SAME

719105.0001/8655015.5

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

asks the Court to issue what would be an advisory opinion regarding events that allegedly took place nearly a decade ago, in 2011.  Plaintiff seeks a declaration that he "is the President of the Company, that [Adams] resigned her position with the Company under the parties' 2011 verbal agreement, and that all actions taken by the Plaintiff for the benefit of the Company as its *de facto* President in reliance on the parties 2011 [sic] are the action [sic] the Company." (SAC ¶ 38.)  Even if it was appropriate for the Court to issue a retrospective declaration regarding actions and events that occur long ago, he has failed to identify with any specificity, whatsoever, the exact "actions" he asks the Court to deem "actions of the Company" which also renders this claim unconstitutionally vague.  Accordingly, Plaintiff's claims for declaratory and injunctive relief should also be dismissed.

   **c.**  **Plaintiff fails to state a claim pursuant to Or. Rev. Stat. § 60.952.**

Plaintiff also fails to state a claim for "Deadlock and Oppression" pursuant to Or. Rev. Stat. § 60.952.  (SAC ¶¶ 23-27).  As a preliminary matter, Plaintiff cannot state a valid claim for relief under Or. Rev. Stat. § 60.952 because this statute did not create a separate cause of action under which a party can assert a standalone claim.  *See Hickey v. Hickey*, 269 Or. App. 258, 267-268 (2015) ("*Hickey*").  Rather, Or. Rev. Stat. § 60.952 is the statutory basis for certain remedies *if* a shareholder in a close corporation can establish the requisite facts in support of other tort claims.  A court may order one or more of the remedies enumerated in Or. Rev. Stat. § 60.952(2) "if it is established that: (1) the directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock and irreparably injury to the corporation is threatened or being suffered, or the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally, because of the deadlock; or (2) the directors or those in control of the corporation have acted, are acting or will act in a manner that is illegal oppressive or fraudulent [* * *.]"  Or. Rev. Stat. § 60.952(1)(a)-(b).  However, "a trial court's ability to order a remedy under ORS 60.952 is not without limit: The remedy must correspond to the wrong – or the legally recognized right – for which the remedy is provided in ORS 60.952."  *Hickey,* 269 Or. App. at 267-268 (2015); *see also Graydog, Inc. v. Giller,* 362 Or.

PAGE 21 –DEFENDANT MELISSA ADAMS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

177 (2017) (holding a third party complaint by a minority shareholder that did not assert a breach of fiduciary duty or make a claim for oppression did not constitute a "proceeding" triggering the availability of remedies under Or. Rev. Stat. § 60.952(2).). The remedy "addresses the particular conduct that occurred – a breach of the controlling shareholder's fiduciary duties." *Hickey,* 269 Or. App. at 267-268. Here, Plaintiff has not tied the remedies he seeks pursuant to Or. Rev. Stat. § 60.952(2) to the violation of any legally recognized right or claim for relief. Instead, he has pled "Close Corporation Remedies Under Or. Rev. Stat. § 60.952" as a separate and distinct cause of action. This is procedurally improper and on this basis alone, Plaintiff's first claim for relief should be dismissed.

Substantively, Plaintiff's requests for remedies pursuant to Or. Rev. Stat. §60.952(2) also fails because Plaintiff has failed to tie those remedies to the violation of a legally recognized right. As discussed in detail above, Plaintiff has failed to state a valid claim for breach of fiduciary duty against Adams, either in her role as a director or as a shareholder. Thus, he cannot obtain the remedies he seeks in connection with those purported "claims." Plaintiff also fails to allege particularized facts sufficient to show deadlock or oppression entitling him to those remedies as contemplated by Or. Rev. Stat. § 60.952(1). While Plaintiff alleges "the Company's directors are deadlocked," he has not alleged with any particularity the matters over which the deadlock exists, efforts made by Moto Biz's directors to break the deadlock, or that despite those efforts, the directors have been unable to break them. (*See* SAC ¶¶ 24-25.) *See* Or. Rev. Stat. § 60.952(1)(a). Indeed, Plaintiff does not identify any corporate matters upon which he and Adams voted on in the SAC and admits that he failed to make a demand upon Moto Biz before initiating this action.

Plaintiff also alleges Adams has "acted in an oppressive manner" by "refus[ing] to actively participate in the Company's business operations * * *" yet fails to allege particularized facts showing conduct that amounts to oppression. (SAC ¶ 26.) Although there is not a definitive definition of oppressive conduct under the statute, oppression of minority shareholders in closely held corporations is frequently linked to breaches of fiduciary duty. *See Hayes v. Olmsted & Assocs., Inc.*, 173 Or. App. 259, 265, (2001); *see, e.g., Campbell v. Ford Industries, Inc.*, 266 Or.

479, 513 P.2d 1153 (1973); *Cooke v. Fresh Exp. Foods Corp., Inc.*, 169 Or. App. 101, 108 (2000). The Oregon Supreme Court has defined 'oppressive conduct' for the purposes of Oregon's privacy corporation statutes as "burdensome, harsh and wrongful conduct; a lack of probity and fair dealing in the affairs of a company to the prejudice of some of its members; or a visual departure from the standards of fair dealing, and a violation of fair play on which every shareholder who entrusts his money to a company is entitled to rely." *Baker v. Commercial Body Builders, Inc.*, 264 Or. 614, 628–29 (1973). The "question of what is 'oppressive' conduct by those in control of a 'close' corporation as its majority stockholders is closely related to what we agree to be the fiduciary duty of a good faith and fair dealing owed by them to its minority stockholders." *Id.* at 629. Again, as discussed in detail above, Plaintiff has failed to allege facts sufficient to establish Adams is a controlling shareholder who owed fiduciary duties, either as a director or as a shareholder to Plaintiff. Nor has Plaintiff alleged facts showing Adams has attempted to squeeze him out of the Company or otherwise exclude him from the benefits of participating in Moto Biz. On the contrary, throughout the SAC, Plaintiff admits that he, not Adams, is the controlling shareholder of Moto Biz. (SAC ¶¶ 7-8, 27(vi).) Plaintiff only filed this lawsuit because Adams refused to submit to Plaintiff's exercise of his dominance in a way that Adams reasonably believed would only cause further harm to the Company. And now that Adams has refused Plaintiff's demands, it is Plaintiff who seeks to squeeze Adams out of the Company by stripping her of her title as President and enjoining her from participating in decisions involving the Company's affairs or "interfering" in any way with Plaintiff's management of the Company, including asking for information about the Company. (SAC ¶¶ 19, 38, 40.) Plaintiff's allegations of deadlock and oppression are patently insufficient to state a valid claim for either as contemplate by Or. Rev. Stat § 60.952(1)(a) and (b). Accordingly, Plaintiff's first claim for relief should be dismissed on these grounds as well.

### 4.    The Court Strike the Immaterial and Impertinent Allegations From the SAC.

In the event the Court declines to dismiss the SAC in its entirety, Adams respectfully requests the Court strike the following portions of the SAC pursuant to Rule 12(f).

PAGE 23 –DEFENDANT MELISSA ADAMS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

a.      **The Court should strike all allegations related to Plaintiff's claims for allegedly past-due salaries from the Company.**  Plaintiff also seeks "past due salary * * * from the Company in the amount of $150,000 per year * * * for the period of time Plaintiff has been actively managing the Company's business affairs alone, after Defendant relocated to California" and admits that "[s]uch salary should be a liability of the Company."  (SAC ¶ 27(vi), Prayer for Relief at ¶ 1(e).)  For the reasons set forth below, these allegations should be struck from the SAC.

First, Plaintiff alleges inconsistent facts regarding whether or not he has ever received payments from Moto Biz, alleging, on the one hand, that he and Adams have been compensated equally through draws of distributions paid by the Company which continued until 2019, and, on the other hand, that he has never been compensated by the Company.  (SAC ¶¶ 17-18.)  Second, Plaintiff does not identify any provision of the Company's Bylaws that entitle him to receive the salary payments he now demands, nor does he allege that the board of directors passed a resolution fixing a salary to be paid to Plaintiff in his capacity as a director or officer, as the Bylaws require. Third, Plaintiff seeks to hold Adams personally liable for his allegedly past-due salaries, not Moto Biz, even though he admits they are a Company liability.  (*See* SAC ¶ 27(vi).)  While Oregon courts occasionally permit contract or tort claimants to "pierce the corporate veil" to hold shareholders of a corporation personally liable for claims the corporation is unable to satisfy, the SAC is devoid of any factual allegations that would support piercing the corporate veil to hold Adams personally liable for the past-due salary Moto Biz allegedly owed Plaintiff.  *See Rice v. Oriental Fireworks Co*., 75 Or. App. 627 (1985); *Amfac Foods, Inc. v. International Systems & Controls Corp*., 294 Or. 94 (1982).  Notably, according to Plaintiff's own allegations, he is the Company's controlling shareholder and  the one responsible for directing the Company to make payments to him or Adams, including the distributions he admits he and Adams received and that he ultimately suspended and denied  to Adams.  (*See* SAC ¶ 18.)  Thus, if Plaintiff claims the Company wrongfully withheld distributions he was entitled to, that claim would be, in essence, a claim against himself as the controlling shareholder during the relevant time frame.  Lastly, Plaintiff seeks compensation from the time Adams relocated to California in 2012, nearly ten years

PAGE 24 –DEFENDANT MELISSA ADAMS' MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MOTION TO STRIKE PORTIONS OF SAME

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719105.0001/8655015.5

ago, to present.  (See SAC ¶¶ 8, 27(vi).)  Under Oregon law, if Plaintiff's claim for past-due salaries is based on the Bylaws or some other board of director resolution that he claims to create a contract, a six-year statute of limitations applies.  Or. Rev. Stat. § 12.080(1).  If the basis of the claim is non-contractual, then a two-year statute of limitations applies.  Or. Rev. Stat. § 12.110(1).  As set forth above, Plaintiff does not allege the basis for his compensation claim anywhere in the SAC.  However, even if the longer, six-year statute of limitations applies, any claim for compensation from 2011-2015 is clearly time barred.

For all of these reasons, the Court should strike any allegations involving his claim for compensation, including those alleged in paragraphs 27(vi) and 1(e) of the Prayer for Relief from the SAC.

**b.**    **The Court should strike Plaintiff's request for attorneys' fees pursuant to Article VII of the Company's Bylaws**.  In the SAC, Plaintiff seeks attorneys' fees and costs incurred pursuant to Article VII of the Company's Bylaws.  (SAC ¶¶ 32, 37, Prayer for Relief ¶ 6.)  However, Article VII of the Bylaws makes no reference, whatsoever, to attorneys' fees, let alone Plaintiff's entitlement to them.  Rather, Article VII of the Company's Bylaws governs "Certificates for Shares" and sets forth the various requirements for certificates of the Company's stock, the maintenance of a stock register, and how lost, stolen or destroyed certificates will be handled. (Larsen Decl. ¶ 2, Ex. A at 8.)  Requests for relief that are  legally unfounded  should be stricken pursuant to Fed. R. Civ. P. 12(f).  Accordingly, the Court should strike from the SAC the portions of paragraphs 32, 37, and paragraph 6 of the Prayer for Relief that refer to Plaintiff's claim for attorneys' fees based on Article VII of the Bylaws.

## IV.  <u>CONCLUSION</u>

For the reasons stated herein, Adams respectfully requests that the Court grant her Motion to Dismiss the SAC in its entirety and dismiss all of Plaintiff's claims with prejudice. Alternatively, Adams requests the Court strike the irrelevant and immaterial portions of the SAC identified herein.

PAGE 25 –DEFENDANT MELISSA ADAMS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND MOTION TO
STRIKE PORTIONS OF SAME

719105.0001/8655015.5

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

DATED:  September 8, 2021

LANE POWELL PC


By:   */s/  Janet K. Larsen*
Janet K. Larsen, OSB No. 950279
Kristen L. Price, OSB No. 175700
Telephone:  503.778.2100
Attorneys for Defendant Melissa Adams

PAGE 26 –DEFENDANT MELISSA ADAMS' MOTION TO DISMISS
SECOND AMENDED COMPLAINT AND MOTION TO
STRIKE PORTIONS OF SAME
719105.0001/8655015.5

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200