IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

REZA MOTAMENI, an individual;
MOTO-BIZ, INC., an Oregon
corporation,

        Plaintiffs,

   v.

MELISSA ADAMS, an individual
formerly known as Melissa Motameni,

        Defendant.

No. 3:21-cv-01184-HZ

OPINION & ORDER

Nicholas J. Henderson
Motschenbacher & Blattner LLP
117 SW Taylor St., Suite 300
Portland, OR 97204

    Attorney for Plaintiff

Janet K. Larsen
Kristen L. Price
Lane Powell PC
601 S.W. Second Ave., Suite 2100
Portland, OR 97204

    Attorneys for Defendant

1 – OPINION & ORDER

HERNÁNDEZ, District Judge:

Plaintiff Reza Motameni, as director, officer, and 50% shareholder of Moto-Biz, Inc. ("Moto-Biz"), brings this action against Defendant Melissa Adams, who is also a director, officer, and 50% shareholder. Plaintiff brings claims individually seeking an award of past due salary from Moto-Biz and derivatively on behalf of Moto-Biz, alleging Defendant breached her fiduciary duties to the corporation. Plaintiff also seeks remedies under Or. Rev. Stat. § (O.R.S.) 60.952 for deadlock among the directors of a close corporation.

Plaintiff filed this action in state court, and Defendant removed the case based on diversity jurisdiction. On November 8, 2021, the Court issued an Opinion & Order dismissing Plaintiff's individual claim for past due salary against Moto-Biz, realigning Moto-Biz as a plaintiff, and retaining jurisdiction under 28 U.S.C. § 1332. Before the Court is Defendant's motion to dismiss all remaining claims and motion to strike portions of Plaintiff's Second Amended Complaint. For the reasons stated below, the Court denies Defendant's motions.

## BACKGROUND

Plaintiff and Defendant, who were formerly married, each have owned 50% of the outstanding shares of Moto-Biz since it was incorporated in Oregon in 1991. Second Amended Complaint ("Compl.") ¶ 5, ECF 4. Moto-Biz operates several salon businesses in Portland, Oregon. At the time that Moto-Biz was incorporated, Plaintiff was named Secretary, and Defendant was appointed as President. Compl. ¶¶ 5-6. Since then, Plaintiff and Defendant have been Moto-Biz's only two directors and only two officers.

After the couple divorced in 2010, they each retained 50% stock ownership of Moto-Biz and remained its only two directors. Compl. ¶¶ 7, 26. In 2012, Defendant moved to California, and Plaintiff assumed full responsibility for the day-to-day management of the corporate

business. Compl. ¶ 8; Def. Mot. 3, ECF 6. Both parties continued to receive equal draws or distributions from the corporation, but Plaintiff received no salary or other compensation for managing the business operations. Compl. ¶ 17.

Since 2016, Moto-Biz has faced a series of financial challenges, including the closure of salons due to the COVID-19 pandemic. Compl. ¶¶ 11-16. Plaintiff alleges that during the time Moto-Biz has experienced financial trouble, Defendant has acted in manner that thwarted business operations and created deadlock within the corporation. Compl. ¶¶ 17-22. Specifically, Plaintiff claims that Defendant (1) unilaterally "withdrew funds from Company accounts" without authorization from all directors; (2) refused to sign documents to release funds to pay counsel hired to pursue insurance coverage claims for Moto-Biz; (3) refused to provide necessary identification to secure a Paycheck Protection Program ("PPP") loan during the COVID-19 pandemic; and (4) refused to provide information and documentation for Moto-Biz to obtain credit in its own name. Compl. ¶¶ 17-18.

Plaintiff seeks damages on behalf of the corporation for Defendant's alleged breaches of the duty of care and the duty of loyalty. Compl. ¶ 28-36. Plaintiff also asks the Court to enjoin Defendant from asserting she is an officer, participating in Moto-Biz's day-to-day affairs, and interfering with Plaintiff's management of the corporation. Compl. ¶ 40. Under O.R.S. 60.952, Plaintiff seeks a judgment altering Moto-Biz's bylaws to remove Defendant from her position as an officer and a director and formally appointing Defendant as president so that he can manage the business without interference from Defendant. Compl. ¶¶ 27iii-iv.

**STANDARDS**

**I.      Rule 12(b)(6) Motion to Dismiss**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990). When "matters outside the pleading are presented to and not excluded

by the court," a Rule 12(b)(6) motion is to "be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Fed. R. Civ. P. 12(b). "However, material which is properly submitted as part of the complaint may be considered" on a motion to dismiss. *Hal Roach Studios*, 896 F.2d at 1555 n.19. A document is not "outside" the complaint if the complaint specifically refers to the document and if its authenticity is not questioned. *Townsend v. Columbia Operations*, 667 F.2d 844, 848-49 (9th Cir. 1982). "[W]hen [the] plaintiff fails to introduce a pertinent document as part of his pleading, [the] defendant may be permitted to introduce the document as an exhibit to a motion attacking the sufficiency of the pleading." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 (4th ed. 2021).

## II.     Rule 12(f) Motion to Strike

The Court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed. R. Civ. P. 12(f). Granting a motion to strike is within the discretion of the district court. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 975 (9th Cir. 2010) (motion to strike under Rule 12(f) reviewed for abuse of discretion). Rule 12(f) motions to strike are viewed with disfavor and are infrequently granted. *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008), aff'd, 608 F.3d 1084 (9th Cir. 2010); *see also Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014) ("Motions to strike are regarded with disfavor because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings.") (quotation marks and alterations omitted). "Any doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in

favor of the non-moving party." 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1382 (4th ed. 2021).

## DISCUSSION

**I.      Shareholder-Derivative Suits—Requirement for Prelitigation Demand on Directors**

Defendant argues that Plaintiff's Second Amended Complaint should be dismissed in its entirety because Plaintiff did not make a pre-litigation demand upon Moto-Biz's board of directors, and Plaintiff "fails to allege with particularity the reasons why a demand would have been futile, as required by Fed. R. Civ. P. 23.1(b)(3)."[1] Def. Mot. 3. Because Plaintiff brings claims on behalf of and seeks remedies for Moto-Biz, this case is a shareholder-derivative suit and is governed by Fed. R. Civ. Pro. 23.1. Rule 23.1(b)(3) requires that before bringing suit on behalf of a corporation, a shareholder plaintiff must have made an effort "to obtain the desired action from the directors." Fed. R. Civ. Pro. 23.1 (b)(3)(A). Otherwise, the plaintiff must state with particularity "the reasons for not obtaining the action or not making the effort." Fed. R. Civ. Pro. 23.1 (b)(3)(B).[2]

A shareholder-plaintiff's obligation to make a pre-litigation demand on the corporate directors is more than just a pleading requirement. *See Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 96-97 (1991) ("[T]he function of the demand doctrine in delimiting the respective powers of the shareholder and of the directors to control corporate litigation clearly is a matter of 'substance,' not 'procedure.'"). "[T]he right of a stockholder to prosecute a derivative suit is

---

[1] Plaintiff admits that he did not make a demand upon the board of directors before filing this action. Compl. ¶ 22.

[2] Oregon law includes the same requirement for shareholder derivate suits. *See* O.R.S. § 60.261(2) ("A complaint in a proceeding brought in the right of a corporation must allege with particularity the demand made, if any, to obtain action by the board of directors . . . or why a demand was not made.")

6 – OPINION & ORDER

limited to situations where the stockholder has demanded that the directors pursue the corporate claim and they have wrongfully refused to do so or where demand is excused because the directors are incapable of making an impartial decision regarding such litigation." *Rales v. Blasband*, 634 A.2d 297, 932 (Del. 1993). Thus, to survive a motion to dismiss for failure to make a demand on the board, the plaintiff must plead facts supporting an inference that a demand would have been futile. *Towers v. Iger*, 912 F.3d 523, 529 (9th Cir. 2018).

Rule 23.1 does not establish when a demand is futile. "Demand futility must be decided by the trial court on a case-by-case basis[.]" *Id.* at 528. As a substantive matter, "[d]emand futility is determined under the law of the company's incorporating state." *Sommers ex rel. FLIR Sys., Inc. v. Lewis*, 641 F. Supp. 2d 1151, 1156 (D. Or. 2009). Oregon courts look to Delaware law to determine whether a demand on the corporation's directors may be excused as futile. *Id.*; *see also Crandon Cap. Partners v. Shelk*, 219 Or. App. 16, 29, 181 P.3d 773, 781 (2008) (applying Delaware law to determine when a pre-litigation demand may be excused).

The Supreme Court of Delaware previously articulated two tests to determine whether a demand on the board of directors would be futile. *United Food and Com. Workers Union and Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1048 (Del. 2021). Courts have utilized the *Aronson* test when the subject of litigation is an alleged wrongful action taken or wrongful decision made by the board of directors. *Id.* Under *Aronson*, a demand may be excused when the Plaintiff alleges particularized facts that create a reasonable doubt that either (1) the directors are disinterested and independent or (2) the challenged conduct was the result of a valid exercise of business judgment. *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1079 (C.D. Cal. 2008) (citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984)).

The other test—articulated in *Rales v. Blasband*—applies when either (1) the challenged action was not a business decision by the board or (2) the plaintiff alleges that the board's failure to take action harmed the corporation. *Id.* at 1080 (citing *Rales*, 634 A.2d at 933). Under the *Rales* test, the Court asks whether the plaintiff's "factual allegations create a reasonable doubt that . . . a majority of the board could have properly exercised its independent and disinterested business judgment in responding to a demand." *Id.*

More recently, the Supreme Court of Delaware blended the *Aronson* test with the *Rales* test and adopted a "three-part test as the universal test for assessing whether demand should be excused as futile." *United Food*, 262 A.3d at 1058. Thus, in all shareholder-derivative suits, courts must now determine on a director-by-director basis (1) whether the director received a personal benefit from the alleged misconduct that is the subject of the litigation; (2) whether the director faces a substantial likelihood of liability on any claims; or (3) whether the director lacks independence from someone who either received a personal benefit from the alleged misconduct or faces a substantial likelihood of liability. *Id.* at 1059. The test is disjunctive, such that "[i]f the answer to any of the questions is 'yes' for at least half of the members of the demand board, then demand is excused as futile." *Id.*

This case is somewhat distinct in that Moto-Biz's board is comprised of only two directors, each of whom is a party to the litigation. Here, a demand by Plaintiff on the board would have been made only to himself and to Defendant. The Court assumes that Plaintiff is excused from making a demand on himself; or in the alternative, Plaintiff in his role as director has acquiesced to such a demand by agreeing to the suit. However, the majority of directors must approve of any action taken by the board, which would require Defendant to also agree to the

suit or to take action to remedy the allegations in the suit.[3] Thus, in analyzing the demand requirement, the Court must only determine whether a demand on Defendant herself would have been futile. Applying the test articulated in *United Food*, the Court finds that Plaintiff has alleged sufficient facts to establish that the requirement for a demand on the board should be excused.

Plaintiff alleges that Defendant took $90,000 in draws from Moto-Biz without authorization or agreement from a majority of the directors. Pl. Resp. 6, ECF 20. Plaintiff also claims that Defendant's actions that prevented Moto-Biz from accessing insurance funds to pay company counsel, applying for a PPP loan, and obtaining credit in its name were done "to block decision-making for the Company, so that Defendant could then leverage the Company's precarious state to obtain compensation or a favorable buyout of her shares in the Company." Compl. ¶ 20. Thus, Plaintiff has alleged facts demonstrating that Defendant, as one-half of the corporation's directors, has engaged in conduct for the purpose of receiving a personal benefit. Accepting the reasonable allegations as true, the Court finds that Plaintiff has satisfied the first prong of the *United Food* test. *See United Food*, 262 A.3d at  (holding that a demand is excused as futile when "the director received a material personal benefit from the alleged misconduct that is the subject of the litigation demand.").

In addition, because Defendant faces personal liability from this action, the second prong of the *United Food* test is also satisfied. The Court recognizes that a demand cannot be excused simply because board members are named as defendants. *See In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 121 (Del. Ch. 2009) ("Demand is not excused solely because the

---

[3] Article III, Section 8 of Moto-Biz's Bylaws states: "A *majority* of the total number of directors shall constitute a quorum for the transaction of business. The act of the *majority* of the directors present at a meeting at which a quorum is present be the act of the Board of Directors." Larsen Decl., Ex. A at 3 (emphasis added).

directors would be deciding to sue themselves."). For a demand to be excused, the plaintiff must allege particularized facts that create a reasonable doubt as to whether board members "face[] a substantial likelihood of personal liability." *Rosenblum v. Pyott*, 765 F.3d 1137, 1150 (9th Cir. 2014). When "directors face a substantial likelihood of personal liability, their ability to consider a demand impartially is compromised . . . excusing demand." *Guttman v. Huang*, 823 A.2d 492, 501 (Del. Ch. 2003).

Here, Plaintiff alleges sufficient facts—which the Court construes as true on a 12(b)(6) motion—showing that Defendant, as a director of Moto-Biz, faces a substantial likelihood personal liability. Plaintiff seeks damages on behalf of Moto-Biz against Defendant for alleged wrong-doing and harm that Defendant has caused to the corporation. A judgment in favor of Plaintiff and Moto-Biz could result in substantial damages for which Defendant would be personally liable. Because at least half the members of the board to which a demand would have been made allegedly received a personal benefit and face a substantial likelihood of liability from the alleged misconduct, such a demand on the board is excused as futile under the test articulated in *United Food*.

## II.     Breach of Fiduciary Duties

All corporate directors owe the fiduciary duties of loyalty, good faith, and fair dealing to the corporation. *Chiles v. Robertson*, 94 Or. App. 604, 619, 767 P.2d 903, 911 (1989). "A director shall discharge the duties of a director . . . with the care an ordinarily prudent person in a like position would exercise under similar circumstances and in a manner the director reasonably believes to be in the best interests of the corporation." O.R.S. 60.357(1). In other words, corporate directors "are charged with an unyielding fiduciary duty to protect the interests of the

corporation and to act in the best interests of its shareholders. *Cede & Co. v. Technicolor*, *Inc.*, 634 A.2d 345, 360 (Del. 1993).

> O.R.S. 60.377 articulates the duties that corporate officers owe to the corporation:
>
> (1) An officer with discretionary authority shall discharge the duties of an officer under that authority:
>
>   (a) In good faith;
>
>   (b) With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and
>
>   (c) In a manner the officer reasonably believes to be in the best interest of the corporation.

O.R.S. 60.377(1).

Defendant owes fiduciary duties to Moto-Biz pursuant to both her positions as a director and as an officer. As stated in O.R.S. 60.357(1) and O.R.S. 60.377(1), directors and officers are required to act with the care of a reasonably prudent person and in a manner they reasonably to be in the best interest of the corporation.

In small closely held corporations, the duties of a particular person who functions as director, officer, and shareholder are often intertwined. *See Lawton v. Nyman* 327 F.3d 30, 38 (1st Cir. 2003) (considering as a group the defendants' capacities as directors, officers, and shareholders to determine whether they breached fiduciary duties to a close corporation because their roles could not be separated.). Here, because Defendant's roles as officer and director cannot easily be distinguished, the Court consolidates these roles for the purpose of determining whether Plaintiff states a claim for breach of fiduciary duties.[4]

---

[4] Courts have also held that majority or controlling shareholders owe fiduciary duties to minority shareholders. *See, e.g., Hayes v. Olmsted & Assocs., Inc.*, 173 Or. App. 259, 265, 21 P.3d 178,

11 – OPINION & ORDER

Plaintiff claims that Defendant breached her duty of care to Moto-Biz, without a legitimate business purpose, by refusing to sign loan documents and refusing to provide necessary information for Moto-Biz to apply for loans, access insurance funds, or obtain credit. Compl. ¶ 30. Plaintiff also alleges that, based on the same actions or inaction, Defendant breached her duty of loyalty to Moto-Biz because she put her personal interests ahead of the corporation's interests. Compl. ¶¶ 33-34. Defendant argues that Plaintiff's claims cannot overcome the business judgment rule because Plaintiff does not allege facts showing Defendant acted in bad faith, was grossly negligent, or committed fraudulent or willful misconduct. Def. Mot. 16. Defendant asserts that Plaintiff's claims only show that she disagreed with Plaintiff in making business decisions for the corporation. Def. Mot. 16-17.

"[T]he heart of a corporate fiduciary's duty is an attitude, not a rule." *Chiles v. Robertson*, 94 Or. App. 604, 619, 767 P.2d 903, 912 (1989). Courts are generally reluctant to "second-guess business decisions that are within the range of reasonableness." *Naito v. Naito*, 178 Or. App. 1, 28, 35 P.3d 1068, 1083 (2001). Under the "business judgment rule," courts presume that directors and officers of a corporation acted "in good faith and in the honest belief that the action taken was in the best interests of the corporation." *Crandon Cap. Partners*, 219 Or. App. at 31 (quoting *Aronson*, 473 a.2d at 812). "The rule operates to preclude a court from imposing itself unreasonably on the business and affairs of a corporation." *Cede & Co.*, 634 A.2d at 360. Thus, courts must not substitute their judgment for that of officers or directors whose decisions "can be attributed to any rational business purpose." *Unocal Corp. v. Mesa Petroleum Co.,* 493 A.2d 946, 954 (Del. 1985).

---

181 (2001); *Zidell v. Zidell, Inc.*, 277 Or. 413, 418, 560 P.2d 1086, 1089 (1977). Because each party owns equal shares of Moto-Biz and neither is a majority shareholder, the Court does not view this case as one involving shareholder oppression.

To overcome the business judgment rule, Plaintiff must allege facts demonstrating that Defendant's actions, or lack thereof, were taken in bad faith and without a rational business purpose. *See In re Galena Biopharma, Inc. Derivative Litig.*, 83 F. Supp. 3d 1047, 1059 (D. Or. 2015) (holding that the plaintiffs' allegations of "facts giving rise to inferences of fraud, bad faith, and self-dealing" were sufficient to overcome the business judgment rule). Plaintiff makes such allegations, which Defendant fails to adequately refute.

Plaintiff's first allegation is that Defendant unilaterally took a draw of $90,000 from Moto-Biz when the corporation "did not have sufficient profits to distribute to owners" and without authorization from a majority of the directors.[5] Accepting Plaintiff's alleged facts as true, the Court finds that Plaintiff states a claim that Defendant breached the duty of loyalty when she withdrew funds from the corporation for her personal use without authorization from a majority of the board. Defendant's alleged unilateral decision to take a draw constitutes self-interested action, which the Court can reasonably infer conflicts with the best interests of the corporation. *See Naas v. Lucas*, 86 Or. App. 406, 411, 739 P.2d 1051, 1054 (1987) (holding that by unilaterally deciding to transfer corporate funds to himself, a corporation's officer/director breached his fiduciary duty "as a matter of law").

Plaintiff also alleges that, without a legitimate business purpose, Defendant refused to sign or provide necessary documents for Moto-Biz to apply for a PPP loan, access insurance funds, or obtain credit, and by doing so, Defendant obstructed the corporation's operations during difficult economic times. Plaintiff claims Defendant's obstructive acts were done for her

---

[5] Oregon law requires the board of directors to authorize shareholder distributions. O.R.S. 60.181(1). Oregon law also prohibits distributions if "in the judgment of the board of directors," the corporation would not "be able to pay its debts as they become due in the usual course of business." O.R.S. 60.181(3). Because Plaintiff claims to have opposed Defendant's $90,000 draw, the distribution could not have been authorized by a majority of board members.

13 – OPINION & ORDER

own personal gain. Drawing inferences from the alleged facts in favor of Plaintiff, the Court finds that Plaintiff effectively rebuts the business judgment rule's presumption that Defendant acted in good faith and in a manner she believed to be in the best interest of the corporation. Thus, Plaintiff has adequately stated a claim that Defendant breached her fiduciary duties to Moto-Biz.

### III.   Relief Pursuant to O.R.S. 60.952

O.R.S. 60.952 provides remedies that courts may order in actions brought by shareholders of close corporations. The statute applies, among other situations, when

> The directors are deadlocked in the management of the corporate affairs, the shareholders are unable to break the deadlock and irreparable injury to the corporation is threatened or being suffered, or the business and affairs of the corporation can no longer be conducted to the advantage of the shareholders generally, because of the deadlock.

O.R.S. 60.952(1)(a). Remedies a court may order include prohibiting, alerting, or setting aside actions of shareholders, directors, or officers; canceling or altering a provision of the corporation's articles of incorporation or bylaws; removing officers or directors; appointing individuals as officers and directors; and an accounting with respect to any matter in dispute. O.R.S. 60.952(2)(a)-(e).

Plaintiff seeks a judgment requiring Defendant to execute certain documents, altering the corporation's bylaws to reduce the number of directors from two to one, removing Defendant from her positions as officer and director, appointing Plaintiff as Moto-Biz's president, and requiring an accounting and settlement of the shareholder's capital accounts. Compl. ¶27i.-v. Each of Plaintiff's requested remedies is within the Court's power as authorized by O.R.S. 60.952.

Defendant argues that Plaintiff's claim under O.R.S. 60.952 should be dismissed because the statute does not create a separate cause of action. Plaintiff asserts that any remedy a court orders pursuant to O.R.S. 60.952 "must correspond to a wrong—or the legally recognized right—for which the remedy is provided in O.R.S. 60.952." *Hickey v. Hickey*, 269 Or. App. 258, 268, 344 P.3d 512, 518 (2015). But Defendant's argument that "the relief Plaintiff seeks under O.R.S. 60.952 is unavailable as a matter of law" is unavailing. Pl. Reply 17, ECF 22. In *Hickey*, the Oregon Court of Appeals did not hold that relief under 60.952 was unavailable—it remanded the case so that the trial court could "devise a remedy more appropriate to wrongs it seeks to redress." 269 Or. App. at 276. The plain language of the O.R.S. 60.952 authorizes courts to order remedies solely because "directors are deadlocked in the management of corporate affairs." O.R.S. 60.952(1)(a).[6] The Court has authority to order remedies that break the deadlock if the parties are unable to do so themselves. It is for the Court to determine what remedies are appropriate given the specific facts of the case. Because Plaintiff has sufficiently alleged that the directors are deadlocked, which Defendant does not dispute, Plaintiff has stated a claim for relief under O.R.S. 60.952.

## IV. Defendant's Motion to Strike Pursuant to Rule 12(f)

Defendant moves to strike Plaintiff's claim for past-due salary for several reasons, including there being no provision in Moto-Biz's bylaws that authorizes salary for directors or officers. Def. Mot. 24. This Court previously issued an Opinion & Order in

---

[6] In arguing that Plaintiff cannot assert a stand-alone claim under O.R.S. 60.952, Defendant seems to rely on O.R.S. 60.952(1)(b), which applies when directors have acted "in a manner that is illegal, oppressive, or fraudulent." But only one of the prerequisites listed in O.R.S. 60.952(1) must be satisfied for the court to fashion a remedy under the statute. O.R.S. 60.952(1)(a) only requires that the directors be deadlocked to the detriment of the corporation.

15 – OPINION & ORDER

which it determined that it had subject matter jurisdiction over this case. *Motameni v. Adams*, No. 3:21-cv-01184-HZ, 2021 WL 5281035, at *4 (D. Or. Nov. 8, 2021). In that Opinion & Order, the Court dismissed Plaintiff's individual claim for past due salary against Moto-Biz. *Id.* at *4-6. Consequently, Defendant's motion to strike that claim is moot.

Defendant also moves to strike Plaintiff's request for attorneys' fees. In his "Demand for Relief," Plaintiff asks the Court to award "attorneys' fees, costs, and disbursements in this action, pursuant to the Company's bylaws and the common fund doctrine." Compl., Demand for Relief ¶ 6. Defendant correctly counters with the fact that nothing in Moto-Biz's bylaws authorizes payment of Plaintiff's attorneys' fees. Plaintiff invokes an indemnification provision in the bylaws as the basis for this Court to award attorneys' fees. Article VI, section 1(a)-(c) of Moto-Biz's bylaws provides that the corporation shall indemnify any person who is a party to action involving the corporation "by reason of the fact that he is or was a director or officer[.]" Larsen Decl., Ex. A at 6-7, ECF 7.[7] The provision provides a mechanism for the corporation to indemnify a director or officer against expenses—including attorneys' fees—when the director or officer successfully defends himself or the corporation in any suit. The indemnification provision, however, does not authorize the Court to award attorneys' fees to the plaintiff in a shareholder derivative suit.

---

[7] Although Plaintiff does not submit Moto-Biz's bylaws with his Complaint, he makes several references to the bylaws. Therefore, Defendant's introduction of the bylaws as an exhibit with her motion to dismiss is permissible. *See* 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1327 (4th ed. 2021).

Defendant also contests Plaintiff's request for attorneys' fees under the common fund doctrine. Defendant correctly asserts that the common fund doctrine requires the creation of a fund of money to which others have a claim and that Plaintiff has not alleged that this litigation will create a fund from which others will benefit. Nevertheless, Plaintiff may properly request attorneys' fees in his Demand for Relief.

"In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975). In *Alyeska Pipeline*, the Supreme Court curtailed the power of federal courts to award attorneys' fees unless such an award is authorized by a statute or an enforceable contract. 421 U.S. at 257. But federal courts retain the equitable authority to award fees in class action suits and shareholder derivative suits, particularly when the opposing litigant engaged in oppressive conduct or bad faith. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991).

In a diversity case, where a federal court exercises subject matter jurisdiction over state law claims, "state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *MRO Commc'ns, Inc. v. Am. Tel. &Tel. Co.*, 197 F.3d 1276, 1281 (9th Cir. 1999) (*quoting Alyeska Pipeline*, 421 U.S. at 259 n.31). The Oregon Supreme Court has recognized that "a court has the equitable power to award [attorneys'] fees to a shareholder who brings litigation that confers a benefit on a corporation or on all of the corporation's shareholders." *Crandon Cap. Partners v. Shelk*, 342 Or. 555, 562, 157 P.3d 176, 179 (2007); *see Krause v. Mason*, 272 Or. 351, 358-59, 537 P.2d 105, 109 (1975) (en banc) ("The general rule is that attorney fees may be recovered when a derivative suit results in a gain or benefit to

17 – OPINION & ORDER

the corporation."). Oregon courts call this principle the "substantial benefit doctrine," which authorizes an award of attorneys' fees even in the absence of a common fund. *Crandall Cap. Partners*, 219 Or. App. at 25 (citing *Crandall Cap. Partners*, 342 Or. at 566).

Consequently, although attorneys' fees are not authorized by a statute or by Moto-Biz's bylaws, the Court retains equitable authority to award attorneys' fees if it deems such to be appropriate. *See De Young v. Brown*, 368 Or. 64, 70, 486 P.3d 740, 744 (2021) (en banc) ("[I]t is well established that [a] court may use its inherent equitable power to award attorney fees, even in the absence of a contract or statutory scheme authorizing fees."). Thus, Defendant's motion to strike Plaintiff's request for attorneys' fees is denied.

## CONCLUSION

The Court DENIES Defendant's Motion to Dismiss [6]. The Court also DENIES Defendant's Motion to Strike Plaintiff's claim for past-due salary as MOOT and DENIES Defendant's Motion to Strike Plaintiff's request for attorneys' fees.

IT IS SO ORDERED.

DATED: January 10, 2022.

                                                  MARCO A. HERNÁNDEZ
                                                  United States District Judge