IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

REZA MOTAMENI, an individual;
MOTO-BIZ, INC., an Oregon
corporation,

                Plaintiffs,

     v.

MELISSA ADAMS, an individual
formerly known as Melissa Motameni,

                Defendant.

MELISSA ADAMS, individually and
derivatively on behalf of MOTO-BIZ,
INC., an Oregon corporation; MOJO-BIZ,
LLC, an Oregon limited liability company;
NOOR, LLC, an Oregon limited liability
company; LUCKY STRIKE NW, LLC, an
Oregon limited liability company,

                Counterclaimants and
                Third-Party Plaintiffs,

     v.

No. 3:21-cv-01184-HZ

OPINION & ORDER

RAY MOTAMENI, an individual;
KIMBERLY JOHNSON, an individual;
R AND K VANCOUVER INVESTMENTS,
LLC, an Oregon limited liability company,

                          Counterclaim Defendants
                          and Third-Party Plaintiffs.

Nicholas J. Henderson
Motschenbacher & Blattner LLP
117 SW Taylor St., Suite 300
Portland, OR 97204

        Attorney for Plaintiff

Janet K. Larsen
Mohammed Workicho
Lane Powell PC
601 S.W. Second Ave., Suite 2100
Portland, OR 97204

        Attorneys for Defendant and
        Third-Party Plaintiffs

Shannon L. Armstrong
Holland & Knight, LLP
601 SW Second Avenue, Suite 1800
Portland, OR 97204

        Attorney for Third-Party
        Defendants.

HERNÁNDEZ, District Judge:

      Plaintiff Reza ("Ray") Motameni, as director, officer, and 50% shareholder of Moto-Biz,

Inc. ("Moto-Biz"), brings this action against Defendant Melissa Adams, who is also a director,

officer, and 50% shareholder. Plaintiff brings claims derivatively on behalf of Moto-Biz, alleging

Defendant breached her fiduciary duties to the corporation and seeking remedies under Or. Rev.

Stat. § (O.R.S.) 60.952 for deadlock among the directors of a close corporation. On January 10,

2022, the Court entered an Opinion & Order denying Defendant's motion to dismiss Plaintiff's Second Amended Complaint. ECF 24.

Defendant filed an Amended Answer and Counterclaims to Plaintiff's Second Amended Complaint, individually and derivatively on behalf of Moto-Biz, Mojo Biz, LLC ("Mojo Biz"), Noor, LLC ("Noor"), and Lucky Strike NW, LLC ("Lucky Strike") (collectively, "Third-Party Plaintiffs"). Defendant asserts counterclaims against Plaintiff and brings third-party claims against Kimberly Johnson and R and K Vancouver Investments, LLC ("R & K") (collectively, "Third-Party Defendants"). Third-Party Defendants move to dismiss all third-party claims against Johnson and R & K pursuant to Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, to require a more definite statement for each claim under Federal Rule of Civil Procedure 12(e). Plaintiff moves to strike portions of Defendant's counterclaims and third-party claims under Federal Rule of Civil Procedure 12(f). The Court grants in part and denies in part Plaintiff's and Third-Party Defendants' motions.

## BACKGROUND

Plaintiff and Defendant, who were formerly married, each have owned 50% of the outstanding shares of Moto-Biz since it was incorporated in Oregon in 1991. Second Amended Complaint ("Compl.") ¶ 5, ECF 4. Moto-Biz operates several salon businesses in Portland, Oregon under the name "Dosha." *Id.* ¶ 6 When Moto-Biz was first incorporated, Plaintiff was named Secretary, and Defendant was appointed as President. *Id.* ¶¶ 5-6. Since then, Plaintiff and Defendant have been Moto-Biz's only two directors and only two officers.

Mojo Biz, LLC ("Mojo Biz") was formed in 2005 by Plaintiff to expand on the salon and spa instruction and training previously provided by Moto-Biz. Counterclaims and Third-Party

Complaint ("TPC") ¶ 9, ECF 32.[1] Plaintiff owns a 28% interest in Mojo Biz, while Defendant, Third-Party Defendant Kimberly Johnson ("Johnson"), and Johnson's former husband each own a 24% interest. *Id.* ¶ 3. Plaintiff formed R & K in 2013 to hold a building in Vancouver, Washington ("Vancouver Building") that was purchased with cash funds contributed by members of Mojo Biz. *Id.* ¶ 4. Plaintiff and Johnson each own 50% of R & K. *Id.* ¶ 2. Plaintiff and Defendant each own 50% of two other Oregon limited liability companies, Noor and Lucky Strike, each of which holds a building in Portland, Oregon. *Id.* ¶¶ 5, 6.

After Plaintiff and Defendant divorced in 2010, they each retained 50% stock ownership of Moto-Biz and remained its only two directors. Compl. ¶¶ 7, 26. In 2012, Defendant moved to California, and Plaintiff assumed full responsibility for the day-to-day management of the Moto-Biz corporate business. *Id.* ¶ 8. Both parties continued to receive equal draws or distributions from the corporation, but Plaintiff received no salary or other compensation for managing the business operations. *Id.* ¶ 17. Since 2016, Moto-Biz has faced a series of financial challenges, including the closure of salons due to the COVID-19 pandemic. *Id.* ¶¶ 11-16. Plaintiff alleges that during the time Moto-Biz has experienced financial trouble, Defendant has acted in manner that thwarted business operations and created deadlock within the corporation. *Id.* ¶¶ 17-22.

Defendant brings counterclaims against Plaintiff and third-party claims against Johnson and R & K, both individually and derivatively on behalf of businesses in which she is a co-owner: Moto-Biz, Mojo Biz, Noor, and Lucky Strike. *Id.* ¶ 36. With her counterclaims and third-party claims, Defendant alleges that Plaintiff and Johnson have used Moto-Biz and Mojo Biz to

---

[1] Defendant's Counterclaims and Third-Party Complaint are included in her Amended Answer to Plaintiff's Second Amended Complaint. ECF 32. The paragraph numbers included herein correspond to the paragraph numbers in the Counterclaims and Third-Party Complaint portion of that document.

shift funds away from Defendant to themselves. TPC ¶ 12. Defendant claims that Plaintiff has commingled funds and assets of companies co-owned by Defendant (Moto-Biz, Mojo Biz, Noor, and Lucky Strike) with the company owned and controlled by Plaintiff and Johnson (R & K) in a manner that favors R & K. *Id.* ¶ 11. Plaintiff used an internal bookkeeper to categorize income and expenses and provide information for tax returns in a manner that favored Plaintiff, Johnson, and R & K over Defendant and her co-owned entities. *Id.* ¶ 14.

In addition, Defendant claims that "[Plaintiff] and Johnson have continually paid themselves, using cash funds from Moto-Biz and Mojo Biz during the very same time [Plaintiff] suspended agreed-upon payments to [Defendant]." *Id.* ¶¶ 12, 35. According to Defendant, Johnson assisted Plaintiff in regularly charging Moto-Biz and Mojo Biz for Plaintiff's personal financial obligations without approval by Defendant.[2] *Id.* ¶ 13. Defendant alleges that, at times, Plaintiff designated on the books that Defendant received distributions from Moto-Biz and Mojo Biz when none had been made to her, while Plaintiff and Johnson received cash distributions from these entities characterized as "guaranteed payments," "compensation," "expense payments," "expense reimbursements," and "loan repayments." *Id.* ¶ 15. Plaintiff, as manager of Mojo Biz, diverted distributions owed to Defendant to R & K for down payment on the Vancouver building. *Id.* ¶ 17. Defendant claims Plaintiff and Johnson characterized Defendant's $100,000 capital contribution to the Vancouver Building as a "gift," and because she holds no financial interest in R & K, she receives no financial benefit from the funds she contributed to purchase the building. *Id.* ¶ 19.

---

[2] As specific examples, Defendant asserts that Plaintiff allowed Johnson to collect an expense reimbursement of $9,057.33 for an unverified Moto-Biz business expense, and on December 24, 2019, Plaintiff personally withdrew $15,000 from Moto-Biz's bank account. TPC ¶ 35.

Through a series of other transactions, Defendant alleges that Plaintiff, with the aid of Johnson, diverted funds from entities Defendant co-owns to R & K. *Id.* ¶ 25. For example, through a promissory note in favor of R & K, Plaintiff shifted a $907,790 R & K financial liability to Mojo Biz, which created "untenable financial liabilities for Mojo Biz." *Id.* ¶ 23. Defendant also alleges that by allowing "guaranteed payments" of $2,066,249 to himself and Johnson from Mojo Biz, he violated the company's operating agreement, which "prohibits compensation to members and Mojo Biz's manager associated with efforts on behalf of the Company." *Id.* ¶ 33. Plaintiff created loans on behalf of Moto-Biz owed to himself, R & K, and Mojo Biz, which accrue interest and imposed a financial liability on Moto-Biz in favor of R & K and Mojo Biz. *Id.* ¶ 34. Defendant also claims she was misled by Plaintiff to provide an unconditional guarantee, personally and on behalf of Moto-Biz, Mojo Biz, and Noor, for R & K's $3,075,000 mortgage on the Vancouver Building. *Id.* ¶ 18.

## STANDARDS

### I.      12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the claims. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). When evaluating the sufficiency of a complaint's factual allegations, the court must accept all material facts alleged in the complaint as true and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). A motion to dismiss under Rule 12(b)(6) will be granted if a plaintiff alleges the "grounds" of his "entitlement to relief" with nothing "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the

allegations in the complaint are true (even if doubtful in fact)[.]" *Id.* (citations and footnote omitted).

To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In other words, a complaint must state a plausible claim for relief and contain "well-pleaded facts" that "permit the court to infer more than the mere possibility of misconduct[.]" *Id.* at 679.

## II.    12(f) Motion to Strike

The court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter. Fed. R. Civ. P. 12(f). Granting a motion to strike is within the discretion of the district court. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 975 (9th Cir. 2010) (motion to strike under Rule 12(f) reviewed for abuse of discretion). Rule 12(f) motions to strike are viewed with disfavor and are infrequently granted. *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008), aff'd, 608 F.3d 1084 (9th Cir. 2010); *see also Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014) ("Motions to strike are regarded with disfavor because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings.") (quotation marks and alterations omitted).

## DISCUSSION

Defendant brings six counterclaims and third-party claims individually and derivatively on behalf of Moto-Biz, Mojo Biz, Noor, and Lucky Strike against Plaintiff and Third-Party

Defendants: (1) a claim for declaratory relief as to Moto-Biz and Mojo Biz; (2) breach of fiduciary duties; (3) breach of contract; (4) a claim seeking accounting of Moto-Biz, Mojo Biz, and R & K; (5) conversion; and (6) unjust enrichment. Under Rule 12(b)(6), Third-Party Defendants move to dismiss Defendant's claim for declaratory relief as to Mojo Biz and all other third-party claims against them. Third-Party Defendants also move, to the extent that the claims are not dismissed, for the Court to require Defendant to make a more definite statement regarding her claims under Rule 12(e).

Plaintiff moves, pursuant to Rule 12(f), to strike Defendant's counterclaim for declaratory relief, Defendant's requested relief requiring Plaintiff to purchase her membership interest in Mojo Biz, and a portion of Defendant's conversion counterclaim against Plaintiff for shifting a $125,000 Mojo Biz debt liability to Defendant personally.

## I.    Declaratory Relief as to Moto-Biz and Mojo Biz

In her first counterclaim and third-party claim, entitled "declaratory relief" under Oregon Revised Statute § ("O.R.S.") 60.952(2) and O.R.S. 63.661, Defendant asks for multiple forms of relief that she also seeks through other claims. Defendant "seeks to set aside any action of [Plaintiff] on behalf of Moto-Biz that is a product of his self-dealing and resulted in financial benefits to [Plaintiff], Johnson, and their co-owned and controlled business entities[.]" TPC ¶ 39. Within this claim, Defendant also seeks other relief, such as damages for unauthorized loans, an order allowing recovery of damages on behalf of Mojo Biz for any unauthorized payments to Plaintiff and Johnson, an order requiring payment of the amounts allegedly owed by Mojo Biz to R & K, an accounting of the assets of Moto-Biz and Mojo Biz, purchase of her shares in Moto-Biz by Plaintiff, and dissolution of Mojo Biz or a buyout of Defendant's interest in Mojo Biz. *Id.* ¶¶ 39, 42-46, 48.

Defendant also seeks specific declaratory relief: a declaration that the unconditional guarantee provided for the Vancouver Building is illegal and unenforceable; a declaration that previously agreed-upon payments to Defendant from Moto-Biz, which Plaintiff suspended, resulted in damages to Defendant; and a declaration that a $125,000 personal liability associated with an R and K promissory note is illegal and unenforceable as to Defendant.

While Plaintiff moves to strike Defendant's claim for declaratory relief in its entirety, Third-Party Defendants move to dismiss the claim as to Mojo Biz only.[3] Third-Party Defendants argue that Defendant's claim for declaratory relief fails as a matter of law as to Mojo Biz because O.R.S. 60.952(2) only applies to corporations and not does not apply to limited liability companies. Third-Party Defendants are correct that remedies under O.R.S. 60.952(2) do not apply to entities other than corporations. Nevertheless, the Court does not need statutory authorization to grant declaratory relief. Declaratory relief is an equitable remedy. *Abbott Laboratories v. Gardner*, 387 U.S. 136, 155 (1967). "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201. Thus, as long as the Court has subject matter jurisdiction over an actual case or controversy, it may grant declaratory relief. *See Spokane Indian Tribe v. United States*, 972 F.2d 1090, 1091 (9th Cir. 1992) ("[A] federal court may declare the rights and other legal relations of parties to a case of actual controversy.").

Third-party Defendants also argue that Defendant's request for declaratory relief is duplicative of her other claims, and Plaintiff asserts the claim for declaratory relief should be stricken as redundant. A claim for declaratory relief should not be used to determine identical

---

[3] Neither Third-Party Defendant, Johnson or R & K, has an ownership interest in Moto-Biz.

issues that are subsumed by other claims. *Jensen v. Quality Loan Serv. Corp.*, 702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010). "Requests for declaratory judgment orders that merely impose the remedies provided for in other claims are duplicative and may be dismissed on that basis." *Fosmire v. Progressive Max Ins. Co.*, No. C10-5291JLR, 2010 WL 3489595, at *5 (W.D. Wash. Aug. 31, 2010).

Thus, to the extent that Defendant seeks a declaration of Plaintiff's and Third-Party Defendant's liability for damages claimed with her other causes of action, her declaratory relief claim is redundant and unnecessary. *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). In addition, Defendant's other claims include exactly the same requests for declaratory relief that she asserts in her stand-alone declaratory relief claim. For example, in her claim for breach of fiduciary duties, Defendant seeks a declaration that the guarantees provided by Moto-Biz, Noor, and Mojo Biz for the Vancouver Building are illegal and unenforceable. TPC ¶ 56, 65, 75. Defendant requests the exact same remedy in her stand-alone claim for declaratory relief. *See id.* ¶ 40 ("[Defendant] seeks a declaration from the court that the unconditional guarantee provided by herself, Moto-Biz, Mojo Biz, and Noor for the Vancouver Building are illegal and unenforceable"). Defendant's breach of fiduciary duties claim also requests a declaration "that the $125,000 personal liability . . . associated with the R and K promissory note is illegal and unenforceable against Defendant." *Id.* ¶ 76. She includes the same language in her stand-alone claim for declaratory relief. *Id.* ¶ 47. Because Defendant's stand-alone claim for declaratory relief is entirely duplicated in other her causes of action, the Court grants Third-Party Defendants motion to dismiss as well as Plaintiff's motion to strike this claim. *See Swartz v. KPMG LLP*, 401 F. Supp. 2d 1146, 1155 (W.D. Wash 2004) *aff'd in part, rev'd in part* 476 F.3d 756 (9th Cir.

2007) (dismissing plaintiff's request for declaratory relief because it was merely duplicative of his request for damages for other causes of action).

## II.    Third-Party Defendants' Motion to Dismiss Remaining Third-Party Claims

Third-Party Defendants move to dismiss Defendant's second, third, fourth, fifth, and sixth third-party claims. In his motion to strike, Plaintiff does not seek to strike these claims in their entirety. The Court addresses Third-Party Defendants' motion to dismiss each of these claims in turn.

### A.    Breach of Fiduciary Duties

In her second counterclaim and third-party claim, Defendant asserts breach of fiduciary duties against Plaintiff, Johnson, and R & K. Defendant asserts a direct claim against Johnson for breach of fiduciary duties she owed to Moto-Biz. Defendant also contends that Johnson and R & K aided and abetted Plaintiff in breaching fiduciary duties he owed to Moto-Biz, Mojo Biz, Noor, and Lucky Strike.

All corporate directors owe the fiduciary duties of loyalty, good faith, and fair dealing to the corporation. *Chiles v. Robertson*, 94 Or. App. 604, 619, 767 P.2d 903, 911 (1989). "A director shall discharge the duties of a director . . . with the care an ordinarily prudent person in a like position would exercise under similar circumstances and in a manner the director reasonably believes to be in the best interests of the corporation." O.R.S. 60.357(1). In other words, corporate directors "are charged with an unyielding fiduciary duty to protect the interests of the corporation and to act in the best interests of its shareholders. *Cede & Co. v. Technicolor, Inc.*, 634 A.2d 345, 360 (Del. 1993).

O.R.S. 60.377 articulates the duties that corporate officers owe to the corporation:

(1) An officer with discretionary authority shall discharge the duties of an officer under that authority:

     (a)  In good faith;

     (b)  With the care an ordinarily prudent person in a like position would exercise under similar circumstances; and

     (c)  In a manner the officer reasonably believes to be in the best interest of the corporation.

O.R.S. 60.377(1).

In moving to dismiss, Third-Party Defendants first argue that Johnson cannot be liable for direct breach because she owed no fiduciary duty to Moto-Biz. Defendant does not allege that Johnson is a director, officer, or shareholder of Moto-Biz. Rather, Defendant alleges that Johnson owed fiduciary duties because she "held herself out as Moto-Biz's Chief Operating Officer ('COO')." Def. Resp. Mot. Dismiss 8, ECF 49.[4] However, Defendant provides no support for her assertion that holding oneself out to be an officer of a corporation creates a fiduciary duty. Thus, Defendants claim that Johnson directly breached fiduciary duties to Moto-Biz fails because she does plausibly allege that Johnson owed any duties to the corporation.

Next, Third-Party Defendants contend that Defendant fails to allege factual content to support her claim that Johnson and R & K aided and abetted Plaintiff in his breach of fiduciary duties to Moto-Biz, Mojo Biz, Noor, and Lucky Strike. Third-Party Defendants argue that Defendant's claim for aiding and abetting must be dismissed because she does not specifically identify what either Johnson or R & K did to assist Plaintiff.

Under Oregon law, "a person who acts in concert with or gives substantial assistance or encouragement to a fiduciary who breaches a duty to a third party may be liable for the resulting

---

[4] In her original Answer, Counterclaims, and Third-Party Complaint, Defendant asserted that Johnson "held herself out as Moto-Biz's Chief Operating Officer. ECF 30, ¶ 13. Third-Party Defendants argue that the Court should not consider Defendant's assertion because her original Answer is now superseded by her Amended Answer in which she omits this statement. TPC, ECF 32. In neither version of the Third-Party Complaint does Defendant allege that Johnson was actually an officer, director, or shareholder of Moto-Biz.

harm." *Reynolds v. Schrock*, 341 Or. 388, 346, 142 P.3d 1062, 1065 (2006) (en banc). A party

may be subject to liability for aiding and abetting if that party:

> (a) does a tortious act in concert with the other or pursuant to a common design
> with him, or
> (b) knows that the other's conduct constitutes a breach of duty and gives substantial
> assistance or encouragement to the other so to conduct himself, or
> (c) gives substantial assistance to the other in accomplishing a tortious result and
> his own conduct, separately considered, constitutes a breach of duty to the third
> person.

*Id.* at 345 (quoting Restatement (Second) of Torts § 876).

In support of her breach of fiduciary duty claim, Defendant describes specific

actions by Plaintiff that constitute breach of fiduciary duties owed to the four entities.

Among other allegations, Defendant asserts that Plaintiff "negotiat[ed] one-sided

transactions and contractual arrangements involving Moto-Biz that have shifted assets

[away from it]," "divert[ed] cash funds from Moto-Biz to payments of unauthorized

financial obligations," "enter[ed] into agreements or transactions involving Noor that

were unfair to Noor," "negotiated transactions and contractual obligations involving

Mojo Biz . . . that were not fair or beneficial to Mojo Biz," "divert[ed] funds from Mojo

Biz to pay [Plaintiff] and Johnson unauthorized 'compensation' and other financial

obligations," and "enter[ed] into loans and other transactions that were not fair to Lucky

Strike." TPC ¶¶ 51a, 51c, 63b, 71b, 71d, 81c.

But in alleging aiding and abetting liability against Third-Party Defendants,

Defendant makes several conclusory rather than factual allegations. *See* TPC ¶¶ 60, 68,

78, 84 ("R and K and Johnson, aided and abetted and acted in concert with [Plaintiff],

providing [Plaintiff] substantial assistance in connection with the unlawful actions

outlined above."); *id.* ¶ 51 ("[Plaintiff], aided and abetted by Johnson and R and K, has

engaged in a series of transactions and conduct . . . that has depleted and diverted funds, and diminished the value of Moto-Biz[.]"); *id.* ¶ 71 ("[Plaintiff]" aided and abetted by Johnson and R and K, has engaged in a series of transactions and conduct . . . that has damaged Mojo Biz[.]"); *id.* ¶ 81 ("("[Plaintiff]" aided and abetted by Johnson and R and K, has engaged in a series of transactions and conduct . . . that has caused damage to Lucky Strike[.]"

According to Third-Party Defendants, because Defendant's aiding and abetting claims "only contain bare legal conclusions, they fail to allege facts sufficient to state a claim and must be dismissed." Third-Party Def. Mot. Dismiss 9, ECF 47. As to R & K, Third-Party Defendants are correct: Defendant alleges no facts that show R & K took any actions to assist Plaintiff in breaching fiduciary duties owed to any of the four companies. Even if certain actions taken by Plaintiff provided a financial benefit to R & K, that by itself does not establish that R & K acted in concert with or gave substantial assistance to Plaintiff. *See Padrick v. Lyons*, 277 Or. App. 455, 472, 372 P.3d 528, 539 ("[T]he third party's 'substantial assistance' must represent the person's active participation in the furtherance of the tortious objective."). Accordingly, Defendant's claim for breach of fiduciary duties against R & K is dismissed.

In addition, as to Noor and Lucky Strike, nowhere in the Third-Party Complaint does Defendant allege facts supporting her conclusory allegations that Johnson aided and abetted Plaintiff in breaching fiduciary duties. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 555). "While legal conclusions can provide the framework of a complaint, they must be supported by factual

allegations." *Id.* at 679. Thus, because Defendant alleges no facts to support her conclusory allegations, the Court dismisses Defendant's claim against Johnson for breach of fiduciary duties to Noor and Lucky Strike.

However, in the "Facts" section of her Third-Party Complaint, Defendant alleges several facts that support her assertions that Johnson worked in concert with Plaintiff to breach fiduciary duties he owed to Moto-Biz and Mojo Biz. For example, Defendant alleges that Plaintiff *and* Johnson "saddled Mojo Biz with a one sided retail lease arrangement involving R and K" and "successfully diverted cash funds of Moto-Biz and Mojo Biz to themselves." TPC ¶¶ 12, 21. Thus, as to Moto-Biz and Mojo Biz, Defendant has alleged facts, which taken as true, show that Johnson committed a tortious act in concert with Plaintiff. *See Reynolds*, 341 Or. at 346 (internal quotations omitted) ("[A] person who acts in concert with . . . a fiduciary who breaches a duty to a third party may be liable for the resulting harm."). Defendant, therefore, states a plausible claim against Johnson for aiding and abetting Plaintiff in breaching fiduciary duties owed to Moto-Biz and Mojo Biz.

### B.    Breach of Contract

Defendant's third counterclaim and third-party claim alleges breach of contract against Plaintiff and Third-Party Defendants. Plaintiff does not move to strike the breach of contract counterclaim against him, but Third-Party Defendants move to dismiss the third-party breach of contract claim against them. As to Third-Party Defendants, Defendant alleges that Johnson and R & K directly breached contractual obligations they owed to Noor.[5] Defendant also claims that

---

[5] Although not included in her Third-Party Complaint, in her Reply brief, Defendant argues that "as an officer and controlling member of Adams' co-owned entities, Johnson also was subject to Mojo Biz and Moto-Biz's operating agreement and bylaws, which Johnson breached through the

Johnson and R & K "aided and abetted" Plaintiff in breaching contracts with Moto-Biz, Mojo Biz, and Lucky Strike.

To establish a claim for breach of contract, a plaintiff "must allege the existence of a contract, its relevant terms, plaintiff's full performance and lack of breach and defendant's breach resulting in damages." *Schmelzer v. Wells Fargo Home Mortg.*, No. CV-10-1445-HZ, 2011 WL 5873058, at *4 (D. Or. Nov. 21, 2011) (quoting *Slover v. Or. State Bd. of Clinical Soc. Workers*, 144 Or. App. 565, 570-71, 927 P.2d 1098, 1101 (1996)). As a threshold matter, Defendant must allege facts showing that Third-Party Defendants were bound by the contract that they allegedly breached.

Regarding Defendant's claim for direct breach of contract with Noor, Defendant claims that Plaintiff breached the "Noor Operating Agreement" by allowing R & K to use the Noor Building without requiring payment, by mismanaging Noor, and by engaging in activities that resulted in corporate waste to Noor. But Defendant does not specifically allege any conduct by Johnson or R & K that constitutes breach of contract. Defendant does not even allege facts showing that Johnson and R & K are parties to or bound by the Noor Operating Agreement or any other contract with Noor. As alleged in Defendant's Third-Party Complaint, Plaintiff and Defendant each own 50% of Noor. Defendant does not allege that Johnson is a party to the Noor Operating Agreement or has any management or financial interest in Noor. Defendant states that R & K uses the Noor Building as its corporate office and business registry address but does not

---

wrongful actions outlined above and outlined in the Complaint." Def. Reply Mot. Dismiss 12, ECF 49. Because in her Third-Party Complaint, Defendant does not assert claims alleging that Johnson directly breached contracts with Moto-Biz or Mojo Biz, the Court declines to consider those claims. *See Pryzblyski v. Stumpf*, No. CV-10-8073-PCT-GMS, 2011 WL 31194, at *4 (D. Ariz. Jan. 5, 2011) (holding that a party cannot assert new theories of relief or supplement allegations in response to a motion to dismiss because all claims must be asserted in the complaint).

allege that R & K's use of the building is subject to the Noor Operating Agreement or is based on any other contractual agreement. Thus, Defendant does not state a plausible claim that either Third-Party Defendant directly breached a contract with Noor.

Next, Defendant's claims that Third-Party Defendants aided and abetted Plaintiff in breaching contracts with Moto-Biz, Mojo Biz, and Lucky Strike fail as a matter of law. Courts recognize "aiding and abetting" as a cause of action in the context of tort claims. *See R. Prasad Indus. v. Flat Irons Env't Sols. Corp.*, No. CV 12-8261-PCT-JAT, 2013 WL 2217831, *8 (D. Ariz. May 20, 2013) ("[a] person who aids and abets a tortfeasor is himself liable for the resulting harm to a third person."). But courts have expressly declined to impose liability for aiding and abetting breach of contract. *See id.* ("A breach of contract is not a tort and Prasad has provided no authority—and the Court has found none—recognizing a cause of action for aiding and abetting a breach of contract."); *whiteCryption Corp. v. Arxan Techs., Inc.*, No. 15-cv-00754-WHO, 2015 WL 3799585, at *4 (N.D. Cal. June 18, 2015) (declining to recognize a cause of action for aiding and abetting breach of contract); *JBF Interlude 2009 Ltd. v. Quibi Holdings LLC*, No. 2:20-CV-02299-CAS (SKx), 2020 WL 6203555, at *7 (C.D. Cal. Oct. 19, 2020) (finding no authority to permit a claim for breach of implied contract based on an "aiding and abetting" theory).

Because Defendant does not allege that either Johnson or R & K has a valid binding contract with Noor, and because an aiding and abetting theory of breach of contract fails as a matter of law, the Court dismisses Defendant's third-party claims for breach of contract.

## C.    Claim Seeking Accounting

With her fourth counterclaim and third-party claim, Defendant seeks an accounting of the assets of her co-owned business entities—Moto-Biz, Mojo Biz, Noor, and Lucky Strike—as well

as an accounting of the assets of R & K. Defendant claims that Plaintiff, aided and abetted by Johnson, has obscured and withheld information about financial transactions between these entities. Third-Party Defendants move to dismiss this claim because Defendant is not a member of R & K and, thus, is owed no duty by R & K.

An accounting is an equitable remedy, not a separate cause of action. *Meyer v. Mittal*, No. 3:21-cv-00621, 2021 WL 5397472, at *6 (D. Or. Nov. 16, 2021). An interested party may compel an accounting of a business entity "when a fiduciary relationship exists between the parties and one party has the duty to render an account to the other." *Id.* (quoting *Brown's Indus., Inc. v. Snow Mountain Pine Co.*, NO. CIV. 87-1119-FR, 1989 WL 142411, at *22 (D. Or. Oct. 26, 1989)). Defendant may be entitled to the remedy of an accounting of the assets of the business entities in which she has an ownership interest. But because she has no fiduciary relationship with R & K, she cannot seek an accounting of R & K as a remedy in this suit. Defendant's claim for an accounting is dismissed as to R & K.

The Court's holding does not preclude Defendant from seeking discovery on financial transactions involving R & K that are pertinent to this suit. But the Court declines to hold that as a remedy, Defendant is entitled to a full accounting of a business in which she has no financial interest and no fiduciary relationship.

### D.    Conversion

In her fifth counterclaim and third-party claim, Defendant asserts conversion, individually and on behalf of Moto-Biz, Mojo Biz, and Noor against Plaintiff and Third-Party Defendants. Third-Party Defendants move to dismiss this claim because "money is not chattel" that could be the subject of a conversion claim. Third-Party Def. Mot. Dismiss 12.

In Oregon, conversion is an "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Talk Radio Network Enters. V. Cumulus Media Inc.*, 271 F. Supp. 3d 1195, 1210 (D. Or. 2017) (quoting *Mustola v. Toddy*, 253 Or. 658, 663, 456 P.2d 1004, 1007 (1969)). Money can be chattel, but "there can be no conversion of money unless it was wrongfully received by the party charged with conversion or unless such party was under obligation to return the specific money to the party claiming it." *Id.* (quoting *Wood Indus. Corp. v. Rose*, 271 Or. 103, 108, 530 P.2d 1945, 1248 (1975). A claim for conversion may lie where the plaintiff asserts that the chattel is some "ear-marked money, or specific money capable of identification, or coins or notes that have been entrusted to the defendant's care." *Wood Indus. Corp.*, 271 Or. at 108.

Defendant claims that starting in August 2019, Plaintiff suspended previously agreed upon payments of $7,500 per month to her from Moto-Biz. Defendant also claims Plaintiff diverted cash funds to himself and Johnson from Mojo Biz totaling $2,066,249 and diverted funds from Moto-Biz to himself and R and K in an amount of at least $500,000. In her conversion claim, Defendant includes $3,075,000 in loan obligations to which she and her co-owned business entities were saddled through unconditional guarantees associated with R & K's Vancouver Building mortgage.

As to Third-Party Defendants, Defendant states no plausible claim regarding suspension of the $7,500 per month payments from Moto-Biz. Defendant does not allege any act on the part of Johnson or R & K to exercise dominion or control over the suspended monthly payments. According to Defendant, Plaintiff suspended previously agreed upon draws from the corporation. Neither Johnson nor R &K are shareholders or otherwise have a financial interest in Moto-Biz.

In addition, the loan obligations of Defendant and her co-owned entities on the R & K mortgage are not chattel that may be the subject of a conversion claim. With the loan guarantees, no money that belonged to Defendant or her co-owned businesses changed hands such that it is now under the control of Third-Party Defendants. To state a claim for conversion, Defendant must "identify sums, approximation of sums, or account holdings to which [her co-owned entities] claim a right of possession." *Talk Radio Network Enters.*, 271 F. Supp. at 1210; *see Wood Indus Corp.*, 271 Or. at 108 (stating that chattel subject to a conversion claim must be "specific money capable of identification"). Loan guarantees do not represent sums of money belonging to Defendant's co-owned entities to which either Johnson or R & K exercise control.

But to the extent that she alleges that funds belonging to Moto-Biz and Mojo Biz were transferred to and are under the dominion of Johnson and R & K, she states a claim for conversion. These transfers includes the portion of the $2,066,249 in funds transferred to Johnson and the portion of the alleged the $500,000 in funds transferred to R & K. For Defendant to state a claim for conversion of these funds, she need not allege that Johnson or R&K transferred the funds themselves. Defendant need only allege that the specific funds were "wrongfully received by the part[ies] charged with conversion." *Wood Indus. Corp.*, 271 Or. at 1248. Because Defendant alleges that Plaintiff wrongfully transferred the funds over which Johnson and R & K exercise dominion, she states a claim for conversion against Third-Party Defendants as to these funds.

In summary, the Court dismisses Defendants conversion claims against Third-Party Defendants for the suspension of payments to her from Moto-Biz and related to the loan guarantees. But the Court declines to dismiss the conversion claim Defendant asserts for any

funds alleged to have been wrongfully transferred from Moto-Biz and Mojo Biz to Johnson and to R & K.

### E.    Unjust Enrichment

In her sixth counterclaim and third-party claim, Defendant asserts unjust enrichment against Plaintiff, Johnson, and R & K. Defendant alleges that Plaintiff diverted cash distributions owed to her to pay for the down payment on the Vancouver building owned by R & K; imposed liability owed by R & K onto Mojo Biz; suspended $7,500 monthly payments that Defendant had been receiving and diverted those funds to himself, Johnson, and R & K; diverted $2,066,249 in funds from Mojo Biz for unauthorized compensation payments to himself and Johnson; misused and diverted cash funds from Moto-Biz for compensation payments, expense reimbursements, and loan repayments to himself, Johnson, and R & K; and unjustly enriched himself, Johnson, and R & K by imposing unconditional guarantees on Defendant and her co-owned businesses to secure a mortgage loan of $3,075,000 owed by R & K on the Vancouver Building.

Under Oregon law, a claim for unjust enrichment requires the plaintiff to establish that: "(1) the plaintiff conferred a benefit on the defendant; (2) the defendant was aware that it had received a benefit; and (3) under the circumstances, it would be unjust for the defendant to retain the benefit without paying for it." *Winters v. Cnty. of Clatsop*, 210 Or. App. 417, 421, 150 P.3d 1104, 1106 (2007). In moving to dismiss the third-party claim against Johnson and R & K, Third-Party Defendants argue that Defendant's claim fails to allege that she herself conferred the benefit on either Johnson or R & K. Third-Party Defendants essentially argue that there can be no claim for unjust enrichment if the defendant has been enriched by the actions of a third-party. But Third-Party Defendants construe the elements of unjust enrichment too narrowly.

First, Defendant brings this claim for unjust enrichment individually as well as derivatively on behalf of Moto-Biz, Mojo Biz, and Noor. Thus, where Defendant has alleged that one of the business entities she co-owns conferred the benefit, Third-Party Defendants' argument fails, and Defendant has adequately alleged a claim of unjust enrichment on behalf of her co-owned entities. Third-Party Defendants also appear to misconstrue "conferred a benefit" as requiring direct action on the part of the person or entity against whom the claim is brought. But the plaintiff in an unjust enrichment claim can confer a benefit on the defendant through the actions of a third party. The defendant only needs to have received a benefit that rightfully belongs to the plaintiff.

For example, in *Tupper v. Roan*, a third party conferred a benefit on the defendant by purchasing a life insurance policy and naming the defendant as the beneficiary; the plaintiff was not involved in the transaction. 349 Or. 211, 213, 243 P.3d 50, 53 (2010). In upholding a claim for unjust enrichment, the court in *Tupper* held that the relevant inquiry is whether the defendant obtained "property or a property interest that rightfully belong[ed]" to the plaintiff. *Id.* at 223; *see Newton v. Pickell*, 201 Or. 225, 230-33, 269 P.2d 508, 510-12 (1954) (holding that a wife could bring a claim for unjust enrichment against a son where the husband had transferred property to the son in violation of a prenuptial agreement). And in *Seib v. Metro. Life Ins. Co.*, on which Third-Party Defendants rely, the plaintiff's claim for unjust enrichment was dismissed because the funds at issue did not legally belong to the plaintiff, not because they were received by the defendant from third parties. No 3:19-cv-00892-AC, 2021 WL 2449099, at *8 (D. Or. Apr. 7, 2021) findings and recommendation adopted, 2021 WL 2446168 (D. Or. June 14, 2021).

Second, the Oregon Supreme Court recently "rejected the formulaic, three-step approach previously laid out for unjust enrichment claims . . . in favor of a case-by-case analysis." *LRY,*

*LLC v. Lake Cnty.*, No. 1:17-cv-00675-MC, 2018 WL 5300387, at *5 (D. Or. Oct. 25, 2018)

(citing *Larisa's Home Care, LLC v. Nichols-Shields*, 362 Or. 115, 127-131, 404 P.3d 912, 918-

921 (2017)). Courts must now "examine the established categories of unjust enrichment as

reflected in Oregon case law and other authorities to determine whether any particular

enrichment is unjust." *Larisa's Home Care*, 362 Or. at 132. Along with Oregon case law, another

source the Court may use to determine whether allegations of unjust enrichment fall within an

established category is the Restatement (Third) of Restitution and Unjust Enrichment. *Id.* at 133.

The Restatement § 44 provides:

> (1) A person who obtains a benefit by conscious interference with a claimant's
> legally protected interests (*or the consequences of such interference by another*)
> is liable in restitution as necessary to prevent unjust enrichment . . .
> (2) For purposes of subsection (1), interference with legally protected interests
> included conduct that is tortious, or that violates another legal duty of
> prohibition (other than duty imposed by contract), if the conduct constitutes an
> actionable wrong to the claimant.

Restatement (Third) of Restitution and Unjust Enrichment, § 44 (2011) (emphasis added). In

addition, "[a] person obtains a benefit by misappropriating financial assets, or in consequence of

their misappropriation by another, is liable in restitution to the victim of the wrong." *Id.* § 41.

Thus, the Restatement clearly anticipates restitution to a claimant from "persons other than the

one who originally interfered with the claimant's property." *Id.* So even if neither Johnson nor

R & K took direct action to misappropriate funds that rightly belong to Defendant, they can be

liable for unjust enrichment based on the actions of Plaintiff.

Third, even if direct tortious action were required on the part of Third-Party Defendants

for claim of unjust enrichment, Defendant alleges such action, at least against Johnson. For

example, Defendant asserts that "[Plaintiff] *and* Johnson have shifted funds away from

[Defendant] to themselves" and "[Plaintiff] *and* Johnson unilaterally characterized [Defendant's]

$100,000 capital contribution to the Vancouver Building as a 'gift'" to themselves. TPC ¶¶ 12, 19 (emphasis added). Accordingly, the Court finds that Defendant has adequately stated a claim for unjust enrichment against Third-Party Defendants, and their motion to dismiss this claim is denied.

### III.    Third-Party Defendants' Motion for a More Definite Statement

Federal Rule of Civil Procedure 12(e) permits defendants to move for a more definite statement when faced with a complaint "which is so vague or ambiguous that the party cannot reasonably prepare a response." "A Rule 12(e) motion is proper only where the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted." *Gregory Vill. Partners, L.P. v. Chevron U.S.A., Inc.*, 805 F. Supp. 2d 888, 896 (N.D. Cal. 2011) (citation and internal quotation marks omitted). "[T]he motion fails where the complaint is specific enough to apprise the defendant of the substance of the claim being asserted." *Id.* Such motions are viewed with disfavor and are rarely granted. "Moreover, if the detail sought by a motion for more definite statement is obtainable through the discovery process, the motion should be denied*." Osorio v. Tran*, No. CV 08-4007 HRL, 2008 WL 4963064, at *2 (N.D. Cal. Nov. 19, 2008).

Third-Party Defendants move for Defendant to make her claims more definite and certain as to the dates on which Third-Party Defendants allegedly took actions that give rise to the third-party claims. Third-Party Defendants argue that definite dates are needed so that they may assert statute-of-limitations defenses. For example, Third-Party Defendants assert that claims for aiding and abetting breach of fiduciary duties are subject to a two-year statute of limitations and conversion and unjust enrichment claims are subject to a six-year statute of limitations. Because Defendant does not provide specific dates on which Third-Party Defendants aided Plaintiff in

breaching fiduciary duties, converted funds from Defendant and her co-owned businesses, or became unjustly enriched, Third-Party Defendants argue that they cannot determine whether the claims are asserted within the relevant statute-of-limitations period.

But a "[p]laintiff is not required to provide exact details like names and dates in her pleading." *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2021 WL 4079207at *17 (N.D. Cal. Sept. 8, 2021). Exact dates are "the sort of information that should be obtained through the discovery process." *Id.* (quoting *Famolare, Inc. v. Edison Bros. Stores, Inc.*, 525 F. Supp. 940, 949 (E.D. Cal. 1981). In the Ninth Circuit, "defendants cannot use Rule 12(e) motions to force plaintiffs to allege specific dates, even to determine the applicability of a possible statute of limitations defense." *Osorio*, 2008 WL 4963064, at *2.

Third-Party Defendants claim that by failing to allege specific dates for when their actions that give rise to Defendant's claims occurred, "[Defendant's] claims are so vague and ambiguous that Johnson and R & K cannot meaningfully respond to the allegations." Mot. Dismiss 17. But Third-party Defendants have adequately responded to the third-party claims as evidenced by success on their motion to dismiss certain claims. See 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1377 (3d ed. 2022) ("[I]f the moving party is able to discharge her pleading obligations under the rules, a Rule 12(e) motion based on the belief that a better affirmative pleading by the opposing party will enable her to provide a more enlightening or accurate response will be denied."). "The purpose of Rule 12(e) is to permit litigants to procure information needed to frame a responsive pleading, not as a substitute for discovery[.]" 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1376 (3d ed. 2022). On the remaining claims, Third-Party Defendant's "recourse is to conduct discovery on the matter and bring a motion for summary judgment if it turns out that

[Defendant's] claims are time-barred." *Renteria v. Nationwide Credit, Inc.*, No. 09cv1195 BTM(JMA), 2009 WL 2754988, at *2 (S.D. Cal. Aug. 27, 2009). Accordingly, Third-Party Defendant's Rule 12(e) motion is denied.

## III.    Plaintiff's Motion to Strike

Plaintiff moves to strike certain portions of Defendant's counterclaims. First, Plaintiff asserts that Defendant's counterclaim for declaratory relief should be stricken as redundant. *See* Fed. R. Civ. P. 12(f) ("The court may strike from a pleading . . . any redundant . . . material."). For the reasons described in I., *supra*, the Court finds that Defendant's stand-alone claim for declaratory relief is redundant of her other counterclaims. The Court grants Plaintiff's motion to strike this counterclaim.

Next, Plaintiff seeks to strike Defendant's requested remedy that would require Plaintiff to purchase Defendant's interest in Mojo Biz, LLC at fair value. Plaintiff argues that there is no legal basis for Defendant's request because the Oregon Limited Liability Act does not authorize such a remedy. Plaintiff is correct that remedies authorized by O.R.S. 60.952, including the "[t]he purchase by the corporation or one or more shareholders of all of the shares of one or more other shareholders for fair value," only apply to close corporations. O.R.S. 60.952(k). And O.R.S. 63.661 only authorizes judicial dissolution of a limited liability company "in a proceeding by the Attorney General." O.R.S. 63.661(1)(a). But even without specific statutory authorization, the Court maintains authority to order "equitable remedies in order to adapt the relief to circumstances of a particular case." *Cameron v. Benson*, 295 Or. 98, 105, 664 P.2d 412, 416 (1983); *see Evergreen W. Bus. Ctr., LLC v. Emmert*, 354 Or. 790, 804, 323 P.3d 250, 259 (2014) (holding that the trial court had authority to impose the equitable remedy of sale of LLC property

and creation of a constructive trust). Because the Court may, in its discretion, grant Defendant's requested relief, Plaintiff's motion to strike is denied.

Lastly, Plaintiff seeks to strike a specific portion of Defendant's counterclaim for conversion. Defendant's conversion counterclaim alleges in part that Plaintiff unilaterally imposed on Defendant a $125,000 liability from Mojo Biz without notice to her and without her consent. Plaintiff asks the Court to strike that portion of Defendant's counterclaim because "imposition of debt" does not constitute conversion. Pl. Mot. Strike 5, ECF 44. But in ruling on Plaintiff's Rule 12(f) motion, the Court declines to opine on the merits of Defendant's claims. A motion under Rule 12(f) may seek to strike any "redundant, immaterial, impertinent or scandalous matter" from the pleadings. Fed. R. Civ. P. 12(f). But Rule 12(f) is not the appropriate vehicle to dismiss a claim "on the basis it is precluded as a matter of law." *Whittlestone*, 618 F.3d at 976. Accordingly, the Court grants Plaintiff's motion to strike Defendant's counterclaim for declaratory relief, but otherwise denies Plaintiff's motion.

## CONCLUSION

Third-Party Defendants' Motion to Dismiss and Motion for a More Definite Statement [47] is GRANTED in part and DENIED in part. Specifically, the Court dismisses Defendant's third-party claim for declaratory relief, claim for breach of contract, claim for breach of fiduciary duties against R & K, claim for breach of fiduciary duties against Johnson on behalf of Noor and Lucky Strike, claim for conversion based on the suspension of payments from Moto-Biz to Defendant and the imposition of loan obligations on Defendant and her co-owned companies, and claim seeking an accounting of R & K. The Court denies Third-Party Defendants' motion to dismiss Defendant's claim against Johnson for aiding and abetting breach of fiduciary duties to

Moto-Biz and Mojo Biz, claim for conversion (except as noted above), and claim for unjust enrichment. Third-Party Defendants motion for a more definite statement is denied.

Plaintiff's Motion to Strike [44] is GRANTED in part and DENIED in part. Specifically, the Court strikes Defendant's counterclaim for declaratory relief.

IT IS SO ORDERED.


DATED:    August 25, 2022    .



_____
MARCO A. HERNÁNDEZ
United States District Judge